## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

RUSS GORDON and
CATHY STACKPOOLE,

      Plaintiffs,

                                   2:23-cv-12812-DML-DRG

v                                  Hon. David Lawson

THE CITY OF HAMTRAMCK,
THE HAMTRAMCK CITY COUNCIL,
and MAYOR AMER GHALIB, in his
official capacity

      Defendants.

_____/

| | |
|---|---|
| MARC M. SUSSELMAN (P29481) | ODEY K. MEROUEH (P76460) |
| Attorney at Law | Meroueh & Hallman LLP |
| Attorney for Plaintiffs | Attorney for Defendants |
| 43834 Brandywyne Rd. | 14339 Ford Road, 2nd Floor |
| Canton, MI 48187 | Dearborn, MI 48125 |
| 734.416.5186 | (313) 582-76460 |
| marcsusselman@gmail.com | okm@mhatlaw.com |

_____/

## DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR ENTRY OF A PRELIMINARY INJUNCTION

Defendants, by and through their attorney, Odey K. Meroueh, state as follows in response to Plaintiffs' Motion moving this Honorable Court for Preliminary Injunctive relief.

1. Defendants admit that Plaintiffs initial Complaint commenced on November 6, 2023 and that their First Amended Complaint was filed by right on November 17, 2023.

2.  Defendants admit that Resolution 2023-82 reads as follows: WHEREAS, each religious, ethnic racial, political, or sexually oriented group is already represented by the country it belongs to; and WHEREAS, the City does not want to open the door for radical or racist groups to ask for their flags to be flown; and WHEREAS, this resolution does not in any way, shape or form infringe upon the fundamental right of an individual or business in the City of Hamtramck to engage free speech. Nor does this resolution limit speech by public employees provided that such employees engage in such speech in a protected time, manner and place. NOW, THEREFORE, BE IT RESOLVED by the City Council of the City of Hamtramck, Wayne County, Michigan, that the government of the City of Hamtramck does not allow any religious, ethnic, racial, political, or sexual orientation group flags to be flown on the City's public properties, and that only, the American flag, the flag of the State of Michigan, the Hamtramck Flag, the Prisoner of War flag and the nations' flags that represent the international character of our City shall be flown.

    *City of Hamtramck Resolution 2023-82.*  Defendants otherwise neither admit nor deny the remaining substance of Plaintiffs' allegations found in paragraph two and leave Plaintiffs to their proofs.

3.  Defendants admit that Plaintiffs were directed not to raise any flags which did not meet the terms of Resolution 2023-82, and yet intentionally on or around July 9, 2023 raised the Pride flag, and after being asked to comply with

Resolution 2023-82, still refused to replace the Pride flag with one of the flags permitted by Resolution 2023-82.

4. Defendants admit that on July 11, 2023 Resolution 2023-99 was passed, which in effect removed Plaintiffs from the Hamtramck Human Relations Commission.

5. Defendants deny that either of the Resolutions passed by Defendants on June 13, 2023 and July 11, 2023 violate the Freedom of Speech Clause of the First Amendment of the U.S. Constitution, nor of the Establishment Clause of the First Amendment of the U.S. Constitution, nor of the Equal Protection Clause of the Fourteenth Amendment of the Constitution. Defendants further deny that removing Plaintiffs from their appointments with the Human Relations Commission in Hamtramck violated the Plaintiffs' freedom of speech under the First Amendment, nor were Plaintiffs' rights found under Article I, subsection 5 of the Michigan Constitution nor under the Michigan Elliot-Larsen Civil Rights Act violated.

6. Plaintiff's Complaint and First Amended Complaint have both been Answered.

7. Defendants Admit that service in this matter of this Motion upon Defendants was proper. However, Defendants deny that Plaintiffs in their filings complied with Fed. R. Civ. Proc. 65(c), which states that a, "court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the Court considers proper to pay the costs and damages

sustained by any party found to have been wrongfully enjoined or restrained. *Fed. R. Civ. Proc. 65 (c)*.  As of this date, Plaintiffs have not provided such security to this Honorable Court, and this Motion should therefore be denied in its entirety, and Defendants should be awarded actual attorneys fees and costs for having to respond.  J&S Dev. Corp. v. Montrose Global Assets, Inc., 279 Fed. Appx. 131, 2008 U.S. App. LEXIS 10842 (3d Cir. 2008)( *order was not proper injunction, however, because no security had been given as required by Fed. R. Civ. P. 65(c)*.  Additionally, Plaintiffs cannot demonstrate a likelihood of success on the merits of their claim.

8.  Defendants do not deny nor admit that Plaintiffs complied with LR 7.1 and leave Plaintiffs to their proofs in such regard.

**WHEREFORE,** Defendants request that this Honorable Court deny Plaintiffs request for preliminary injunctive relief in its entirety, as well as all other relief sought by Plaintiffs, equitable or otherwise.

Dated: January 12, 2024                    /s/ Odey K. Meroueh
                                           Odey K. Meroueh P74640

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

RUSS GORDON and
CATHY STACKPOOLE,

     Plaintiffs,

|  |  |
|---|---|
| | 2:23-cv-12812-DML-DRG |
| v | Hon. David Lawson |

THE CITY OF HAMTRAMCK,
THE HAMTRAMCK CITY COUNCIL,
and MAYOR AMER GHALIB, in his
official capacity

     Defendants.

_____/

| MARC M. SUSSELMAN (P29481) | ODEY K. MEROUEH (P76460) |
|---|---|
| Attorney at Law | Meroueh & Hallman LLP |
| Attorney for Plaintiffs | Attorney for Defendants |
| 43834 Brandywyne Rd. | 14339 Ford Road, 2nd Floor |
| Canton, MI 48187 | Dearborn, MI 48125 |
| 734.416.5186 | (313) 582-76460 |
| marcsusselman@gmail.com | okm@mhatlaw.com |

_____/

## BRIEF IN SUPPORT OF DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR ENTRY OF A PRELIMINARY INJUNCTION

# **Table of Contents**

Table of Authorities........................................................................................................ 7

Statement of Issues Presented.................................................................................... 8-9

Factual Background.....................................................................................................10-14

Law and Argument.....................................................................................................14

   A. Plaintiffs cannot demonstrate a likelihood of success on the merits of their argument that Hamtramck Resolution 2023-82 is not government speech and is there subject to regulation ..............................................................................................................16

   B. Even if Resolution 2023-82 were found not to be government speech, it is content and viewpoint neutral..............................................................................................................20

   C.  Plaintiffs will not be irreparably harmed should the Court fail to grant their Motion for Temporary Restraining Order, and if anything the balance of harm rests in the favor of the City of Hamtramck…………………………….....................................................24

   IV. Conclusion...............................................................................................25

## **Table of Authorities**

### **Cases**

*DiLoreto v. Downey Unified School District Board of Educ.,*
196 F.3d 958, 969 (6th Cir.)(1999)……………………………………………….23
*Good News Club v. Milford Cent. Sch.,*
533 U.S. 98, 106-7 (2001)……………………………………………………... 21-22
*Griffin v. Sec'y of Veterans Affairs,*
288 F.3d 1309, 1324 (2002)……………………………………………………...19
*Lamb's Chapel,* 508 U.S. at 394-95…………………………………………...24
*Pleasant Grove City* v. *Summum*, 555 U.S. 460 (2009)…………………  17,22,24
*Make the Road by Walking, Inc. v Turner,*
378 F.3d 133, *citing Cornelius,* 473 U.S. at 809………………………………23
*The Maine Educ. Assoc. Benefits Trust v. Cioppa,* 695 F.3d 145
2012)……………………………………………………………………  ..14, 15
*National Endowment for Arts v. Finley*
 524 U.S. 569(1998)…………………………………………..………………17
*People for the Ethical Treatment of Animals, Inc., v. Gittens,*
414 F.3d 23, 29-30 (2005)……………………………………………………17-18
*Perry Ed. Ass'n v. Perry Local Educators' Assn.,* 460 U.S. 37, 46 (1983) ……. 22
*Pleasant Grove City* v. *Summum*, 555 U.S. 460 (2009)…………………  17,22,24
*Rosenberger v. Rector and Visitors*
*of Univ. of Va.,* 515 U.S. 819, 833 (1995)…………………………..… 17, 22
*Rust v. Sullivan,* 500 U.S. 173, 194 (1991)………………….........................17
*Shurtleff v. City of Boston,* 42 S. Ct. 1583 (2022)………………………  18-19, 22
*Texas v. Johnson,* 491 U.S. 397, 405 (1989)……………………………..20
*University of Texas v. Camenisch,*
451 U.S. 390 (1981)………………………………………………………...15
*Walker v Texas Div., Sons of Confederate Veterans, Inc.,*
576 U.S. 200, 209-213 (2015)………………………………………… …… 20,21
*West Virginia State Board of Education*
*v. Barnette,* 319 U.S. 624, 632 (1943)…………………………………………  20

### **Statutes**

Fed. R. Civ. Proc. 56

City of Hamtramck Charter

## STATEMENT OF ISSUES PRESENTED

I.   **Have The Plaintiffs Demonstrated A Substantial Likelihood Of Success On Their Claims That Resolution 2023-82 Does Not Constitute Government Speech?**

Defendants state: NO.

The Court should find: NO. For the reasons contained in this Response as well as the Defendants' Response to Plaintiff's Motion for Summary Disposition, Resolution 2023-82 clearly constitutes an expression of the City of Hamtramck.

II.  **Even Should Resolution 2023-82 Be Found Not To Be Government Speech, Was It Content And Viewpoint Neutral?**

Defendants state: YES

The Court should find: YES, or at least that there is a genuine issue of material fact as to whether Resolution 2023-82 was content and viewpoint neutral.

III. **Is There At Least A Genuine Issue Of Material Fact As To The Reasons/Rationale That Plaintiffs Were Removed From Their Positions With The City Of Hamtramck Human Relations Commission?**

Defendants state: YES

The Court should find: YES, Plaintiffs were legally removed from their respective appointed positions with the Hamtramck Human Relations Commission, not in violation of the Plaintiffs' Federal or State of Michigan Constitutional rights nor in violation of Michigan's Elliot Larsen Civil Rights Act.

**IV.   Can The Plaintiffs Demonstrate that they will Be Irreparably Harmed if the Court Denies their Request for a Mandatory Injunction?**

Defendants state: NO.

The Court should find: No, the balance of harm in this matter favors the City of Hamtramck where an injunction would force the City of Hamtramck to reappoint Plaintiffs to the Human Rights Commission, and additionally fly any flag that the Plaintiffs or other groups desire to see raised.  Especially at this current time of political unrest and with the City of Hamtramck's large Yemeni and Muslim population, there is the very real possibility of incendiary or political flags being requested.

# I.    **FACTUAL BACKGROUND**

The City of Hamtramck established the Hamtramck Human Relations in 2013. *Hamtramck Resolution 2013-102: Resolution Allowing The Human Relations Commission To Restore And Maintain City Flagpoles And Install Flags And Plaques To Represent The International Character Of The City Of Hamtramck.* Initially established as a restoration project, the Commission was, "authorized to solicit funds from interested parties, individuals or businesses for the sole purpose of the restoration and maintenance of city flagpoles, purchase of flags and plaques and ongoing maintenance of the project." See *id*. Plaintiff Gordon has been a member of the Commission since its establishment. Upon good faith and belief, Plaintiff Stackpoole joined the Commission in 2023.

Resolution 2013-102 makes no comment as to the Commission's authority, sole or otherwise, as alleged in Plaintiffs' Motion. The commission, like all city boards and commissions, operates under the authority of the appointing authority, City of Hamtramck. City of Hamtramck, Charter 5-01(b)(h). As mayoral appointees, Plaintiffs serve at the Mayor's pleasure. The mayor may remove them at will.

*City of Hamtramck Charter, Chapter 5-01(h) the appointing authority may remove, without assigning cause, except where prohibited by state law, any department head or member of any board or commission who by the terms of*

*this charter or ordinance of the City shall be appointed by the appointing authority provided, that for the first ninety (90) days after his election or appointment, the appointing authority may remove such department head, and commission or board members only for cause.*

*(b) The members of all boards and commissions that are created by ordinance shall be appointed by the mayor if the ordinance creating the board or commission does not specify the method by which members to that board or commission are appointed.*

City of Hamtramck, Charter 5-01(b)(h).

In other words, the Mayor has authority to pick his own team and carry out his agenda.  Nothing about this arrangement runs afoul of the appointment rights of most chief executives at all levels of government.  The people elect chief executives with the express understanding that they will surround themselves with individuals who carry out their policy initiatives.  Elections, as the popular saying goes, have consequences.

Throughout the years following its enactment, the Commission purchased flags, choosing those that the city would fly.. *Affidavits of Russ Gordon, City Manager Maxwell Garbarino.*  While prior administrations did not typically interfere with the Commission's decisions in this regard, they did on occasion, and those serving on the Commission clearly served at the pleasure of those prior administrations with whom

they aligned.  See *Russ Gordon Affidavit ¶ 9 "In 2021, Cathleen Angerer, the Hamtramck City manager, contacted me and indicated that she had been contacted by Tim Price, Chairperson of the Hamtramck Arts and Culture Commission, and that he requested that the Pride flag be displayed from one of the flagpoles on Joseph Campau Ave.*  Residents could request certain flags, but the Commission did not approve every request as Plaintiffs themselves admit.  *Affidavit of Russ Gordon,  ¶ 5..*  Additionally, occasionally residents asked their elected representatives (councilmembers and mayors) about the possibility of raising certain flags, that City officials  denied without consulting or involving members of the Human Rights Commission.  Exhibit A - *Affidavit of Maxwell Garbarino, ¶ 3;* Exhibit B - *Affidavit of Mayor Amer Ghalib, ¶ 2.*

In 2021, in the midst of her unsuccessful re-election campaign,, former Hamtramck Mayor Karen Majewski split a 3-3 tie in City Council to enact Resolution 2021-73 – Approving Display of A Pride Flag During the Month of June at Zussman Park.  Plaintiffs admit in their Motion that the idea of flying the Pride flag came, not from the Human Rights Commission but from the former City of Hamtramck administration.  Zussman Park is the park located directly adjacent to Hamtramck City Hall.  The pride flag was the first flag flown by the Commission that did not represent an international country or region.

Approximately two years later, on June 13, 2023, the City of Hamtramck passed Resolution 2023-82, titled, *Resolution to Maintain and Confirm the Neutrality of The*

*City of Hamtramck Towards its Residents.*  In relevant part, the Resolution states:

> WHEREAS, each religious, ethnic racial, political, or sexually oriented group is already represented by the country it belongs to; and WHEREAS, the City does not want to open the door for radical or racist groups to ask for their flags to be flown; and WHEREAS, this resolution does not in any way, shape or form infringe upon the fundamental right of an individual or business in the City of Hamtramck to engage free speech. Nor does this resolution limit speech by public employees provided that such employees engage in such speech in a protected time, manner and place.

> NOW, THEREFOE, BE IT RESOLVED by the City Council of the City of Hamtramck, Wayne County, Michigan, that the government of the City of Hamtramck does not allow any religious, ethic, racial, political, or sexual orientation group flags to be flown on the City's public properties, and that only, the American flag, the flag of the State of Michigan, the Hamtramck Flag, the Prisoner of War flag and the nations' flags that represent the international character of our City shall be flown.

> Resolution 2023-82.

At the City Council meeting in which the resolution was passed, there were as Plaintiffs point out many vocal participants both supporting the resolution and opposing it from residents and non-residents of Hamtramck.  Non-Hamtramck

residents made most of the comments opposing the resolution. One public commentor stated he wished to fly a flag stating in Arabic that "there is no God but Allah." Councilman Mohammed Hassan stated that he brought the resolution as a means of the City of Hamtramck maintaining neutral footing in its speech, as he and other councilmen had received pressure to raise other flags in the preceding months and years which they had shut down.  Exhibits A &B; *Affidavits of Mayor Amer Ghalib, Maxwell Garbarino.*  Some who spoke that evening raised the specter of opening the door to Nazi flags and other white nationalist symbols of hate.  City Councilman Hassan was the top vote-getter in the City of Hamtramck Council election this past November. https://www.clickondetroit.com/news/michigan/2023/10/27/hamtramck-general-election-results-for-nov-7-2023/.

After Council enacted the resolution, Plaintiffs Gordon and Stackpoole simply refused to follow it, choosing instead to defy the official who appointed them. Several city employees, it should be noted, shared Stackpoole and Gordon's position on the issue and freely expressed their dissatisfaction with 2023-82, all without consequence.  However, they were not at will appointees serving at the Mayor's pleasure.

## II.   ARGUMENT

## a. <u>LEGAL STANDARD</u>

The standard for granting a preliminary injunction is well-known.  Plaintiffs bear the burden of persuading the Court that (1) based on the evidence as submitted Plaintiffs enjoy a likelihood of success on the merits (2) the potential for irreparable harm to the movant in the absence of an injunction (3) the balance of the movant's hardship if relief is denied versus the nonmovant's hardship if relief is granted; and (4) the effect, if any, of the decision on the public interest." *The Maine Educ. Assoc. Benefits Trust v. Cioppa,* 695 F.3d 145, 152 (1st Cir. 2012).

It is important for this Court to note that Plaintiffs in their Motion for Preliminary Injunctive relief are seeking affirmative relief in the form of a Temporary Restraining Order in the sense that Plaintiffs are asking the Court not just to maintain the status quo, but for affirmative action Ordered on behalf of the City of Hamtramck.  The burden for a preliminary injunction seeking affirmative relief is higher than to maintain the status quo.  *University of Texas v. Camenisch,* 451 U.S. 390, 395 (1981)(the purpose of a preliminary injunction "is merely to reserve the relative positions of the parties until a trial on the merits can be held.").

## b. <u>Plaintiffs Have Not Demonstrated A Substantial Likelihood Of Success On Their Claims That Resolution 2023-82 Does Not Constitute Government Speech, And Where Even If Resolution</u>

<u>**2023-82 Could Be Considered Private Speech, Plaintiffs cannot**</u>
<u>**Show the Resolution to Unreasonable or Non-ViewPoint Neutral.**</u>

"[T]he movant's likelihood of success is the touchstone of the preliminary injunction inquiry." *Maine Educ. Ass'n,* 695 F.3d at 152 (quotations omitted." Where Plaintiffs have not demonstrated a substantial likelihood of success on the merits of their First Amendment and equal protection claims the Court should deny the motion for a mandatory preliminary injunction and all relief sought.  As touched upon in the Defendants Response to Plaintiffs Motion for Summary Disposition as well, the City of Hamtramck's act of raising flags on City of Hamtramck flagpoles located in front of City Hall over which the City of Hamtramck has maintained consistent ownership and control constitutes government speech in the plainest sense.  Because the City is engaging in expression itself in flying the flags, the forum analysis that Plaintiffs push forward in their motions simply do not apply, and Plaintiffs claims regarding viewpoint discrimination are irrelevant.

Even should the Court view the City's decision to raise certain flags on City Hall flagpoles as private speech in a limited public forum, the City's decision not to raise any flags outside of the American, Michigan, POW and those representing the international character of the City of Hamtramck represents a valid regulation of such speech.  Additionally, because the City of Hamtramck raising or not raising flags on City of Hamtramck flagpoles is classified as government speech, the Plaintiffs cannot maintain equal protection claims in any capacity because they do

not have any constitutional right which might limit the City's ability to express itself. Of course, even if the speech here could be classified as private, Plaintiffs have not alleged how they were treated any differently by the City of Hamtramck from any other commission or board member for expression of their First Amendment Right. Therefore, the Plaintiff's do not have a likelihood of succeeding on their claims and this Honorable Court should deny their motion in its entirety.

1.  **The City of Hamtramck's Resolution 2023-82 Regarding Flags Raised On City of Hamtramck Flagpoles is Clearly Government Speech.**

The Free Speech Clause of the First Amendment does not regulate or limit the government when it uses its own property to engage in its own speech. *Pleasant Grove City, Utah v. Summum,* 555 U.S. 460, 467-468 (2000). A governmental entity is, "entitled to say what it wishes," *Rosenberger v. Rector and Visitors of Univ. of Va.,* 515 U.S. 819, 833 (1995), and to select the views that it wants to express. *See Rust v. Sullivan,* 500 U.S. 173, 194 (1991); *National Endowment for Arts v. Finley*, 524 U.S. 569, 598 (1998). Additionally, and most relevant in the eyes of the Court, the government's use of its editorial discretion in the selection and presentation of the speech of private citizens is a communicative act that may constitute government speech. *See Summum,* 555 U.S. at 471-72 (finding city's selection of privately donated monuments for display in a city park **was government speech** where city exercised final approval authority over the selection of the monuments and where

the objective observer would determine that the city was speaker); *People for the Ethical Treatment of Animals, Inc., v. Gittens,* 414 F.3d 23, 29-30 (D.C. Cir. 2005)(holding that the government was engaged in its own speech where it selected third-party designs to be placed on sidewalks and in parks, and therefore a third party could not require government to include an unwanted design.   Historically, the government's choice of which flags to fly has been found to constitute government speech.   *See Griffin v. Sec'y of Veterans Affairs,* 288 F.3d 1309, 1324 (Fed. Cir. 2002)('We have no doubt that the government engages in speech when it flies its own flags over a national cemetery, and this its choice of which flags to fly may favor one viewpoint over another . . . [s]uch speech, and discrimination between competing viewpoints, does not . . . implicate the First Amendment rights of others.").

As Plaintiffs themselves cite to in their respective motions, the key analysis is the government's control over the flag's content and meaning that would indicate the type of control when the government is exercising its right to free speech without regulation. *Shurtleff v. City of Boston* 42 S. Ct. 1583 (2022)( On this issue, Boston's record it thin. Boston says that all (or at least most) of the 50 flags I approved reflect particular city-approved values or views. Flying flags associated with other countries celebrated Bostonians' many different national origins; flying other flags, Boston adds, was not "wholly unconnected" from a diversity message or "some other day or cause the City or Commonwealth had already endorsed." …. That may well be true of the Pride Flag raised annually to commemorate Boston Pride Week. … But it is more difficult to discern a connection to the city as to, say, the Metro Credit Union flag raising, a ceremony by a local community bank. In any event, we do not settle this dispute by counting noses-or, rather, counting flags. That is so for several reasons. For one thing, Boston told the public that it sought "to accommodate all applicants" who wished to hold events at Boston's "public

forum ," including on City Hall Plaza. … The application form asked only the contact information and a brief description of the event, with proposed dates and times. The city employee who handled applications testified by deposition that he had previously "never requested to review a flag or requested changes to a flag in connection with approval"; nor did he even see flags before the events. … The city's practice was to approve flag raisings, without exception. It has no record of denying a request until Shurtleff's. Boston acknowledges it "hadn't spent a lot of time really thinking about" its flag-raising practices until this case. … True to its word, the city had nothing-no written policies or clear internal guidance-about what flags groups could fly and what those flags would communicate.

See id. At 1592.

Plaintiffs do their best to shape the situation in Hamtramck to be in the mold of what happened in the City of Boston in the *Shurtleff* matter, but the two could not be more different.  Even while claiming in his affidavit that his practice was to display any flag which a resident requested, Plaintiff admits that at least on one occasion he himself refused to fly a flag which he saw as inflammatory.  *Affidavit of Russ Gordon*.  City of Hamtramck Mayor Ghalib and City Manager Maxwell Garbarino have testified to several other instances of requested flags being refused by the City.  Additionally, on several occasions and upon information and belief the City of Hamtramck itself has chosen which flags to fly without consultation of any residents at all.  Since its inception, the Hamtramck Human Rights Commission has generally chosen flags which itself feels represent the diversity of the City of Hamtramck, pending approval by City of Hamtramck administration.  Plaintiff's Affidavit itself makes clear over and over that the final approval for flags which

were requested to be flown rested with the City of Hamtramck, and that the City kept consistent control and authority over which flags were flown.  As in *Summom*, whether Hamtramck funds were used to buy the flags is not an element the Court finds relevant in determining whether speech is government speech or private in authorship.

Governments have conveyed messages on flags since time immemorial.  *See Texas v. Johnson,* 491 U.S. 397, 405 (1989)("Pregnant with expressive content, the flag as readily signifies this Nation as does the combination of letters found in 'America.'"); *See also West Virginia State Board of Education v. Barnette,* 319 U.S. 624, 632 (1943)("The use of an emblem or flag to symbolize some system, idea, institution, or personality is a shortcut from mind to mind . . . [c]auses and nations, political parties, lodges and ecclesiastical groups seek to knit loyalty of their followings to a flag or banner.").  Here, as in *Walker*, the City of Hamtramck maintain direct control over the messages conveyed by exercising final approval authority over the selection of flags for display outside of Hamtramck City Hall. Plaintiff Russ Gordon Affidavit; *See Walker v/ .Texas Div., Sons of Confederate Veterans, Inc.,* 576 U.S. 200, 209-213 (2015)

## 2. <u>Forum Analysis Is Not Applicable Where Government is Engaging in Government Speech.</u>

Where the City of Hamtramck as here is engaging in government speech, the traditional forum analysis applied to government's action related to private speech

on government simply does not apply, and Plaintiffs multiple claims that the City engaged in viewpoint discrimination fail outright.

Just by allowing applicants to make flag-raising requests, the City of Hamtramck has not made anything resembling an affirmative choice to open up its flagpoles as a public forum. *See U.S. v. American Library Ass'n,* 539 U.S. 194, 206 (2003)("The government does not create a public forum by permitting limited discourse, but only by intentionally opening a non-traditional forum for public discourse."). At most, and this would be a stretch that is not supported by the evidentiary record, the City of Hamtramck has engaged in a process where it allows applicants to propose the type of expressive conduct in which the City may or may not choose to engage, and because the City is therefore engaged in its own speech, the "First Amendment structures that attend the various types of government established forums do not apply." *See Walker,* 135 S.Ct. at 2250.

### 3. <u>Even If Resolution 2023-82 Was Analyzed As A Restriction On Private Speech, It Would Be A Constitutional Regulation Of Speech In A Nonpublic Or Limited Public Forum.</u>

Even should the raising of flags on City of Hamtramck flagpoles be considered private speech, Resolution 2023-82 is constitutional because it is both reasonable and viewpoint neutral in that it does not discriminate between viewpoints at all, but excludes all flags not explicitly listed as appropriate regardless of viewpoint. Governments may reserve a non-public or a limited public forum to the

limited and legitimate purposes for which it was created by reserving it for certain types of groups or for discussion of certain topics as long as the restrictions are both reasonable and viewpoint neutral.  *Perry Ed. Ass'n v. Perry Local Educators' Assn.,* 460 U.S. 37, 46 (1983); *Good News Club v. Milford Cent. Sch.,* 533 U.S. 98, 106-7 (2001).  The City of Hamtramck in resolution form or otherwise may exclude categories of speech, unless "its distinction is not 'reasonable in light of the purpose served by the forum,' . . . [or] it discriminate[s] against speech on the basis of its viewpoint.  *Rosenberger,* 515 U.S. at 829.  Courts have specifically identified religion as a subject that the government may exclude from a forum while remaining viewpoint neutral if all speech about religion is excluded and not just particular religious viewpoints or religious viewpoints on otherwise permissible subjects. *DiLoreto v. Downey Unified School District Board of Educ.,* 196 F.3d 958, 969 (6th Cir.)(1999).

Here, the City of Hamtramck's expression of speech in Resolution 2023-82 is consistent with the above authorities and is clearly viewpoint neutral.  Unlike in cases where the government refused to allow expressions of a religious perspective, such as *Shurtleff*, here the City seeks to exclude any and all flags not included in the terms of the resolution, religious or political or otherwise, and is doing so only with regard to City flagpoles which has historically been used to express government speech.  "[W]here allowing private expression in a nonpublic forum may imply

government endorsement of that expression, limiting or excluding speakers may be reasonable." *Make the Road by Walking, Inc. v Turner,* 378 F.3d 133, *citing Cornelius,* 473 U.S. at 809. Additionally, the government's interest in avoiding an Establishment Clause violation may be itself compelling. *Summum,* 130 F.3d at 921.

Plaintiffs improperly seek to apply strict scrutiny review to the City of Hamtramck's decision to refrain from raising certain non-geographical flags on its flagpole, apparently regarding the flagpole as either a traditional public forum or a designated public forum. As noted above and in response to the Plaintiffs' Motion for Summary Disposition, the City's flagpole is not a traditional public forum under First Amendment jurisprudence, because, unlike a street or a park, it is not "immemorially . . . held in trust for the use of the public, and, time out of mind . . . used for purposes of assembly, communicating thoughts between citizens, and discussing public questions." Hague, 307 U.S. at 515. If the flags raised by the City are viewed as private speech, as the City contests but assumes for the purposes of this section of its memorandum, the City's flagpole should not be viewed as a designated public forum because the City has not opened the forum to any type of private speech, but has restricted the forum by adopting a policy and practice of refraining from flying non-secular flags. Therefore, the flagpole would be more properly viewed as a limited public forum or a non-public forum.

Even if Resolution 2023-82 was found to be a restriction on private speech for which the City of Hamtramck had no compelling governmental interest in avoiding an Establishment Clause violation (it would), the categorical exclusion of the plain language of the Resolution in no way shape or form violates the Plaintiffs' constitutional rights.

**4. Plaintiffs' Equal Protection Claims Fail Because Plaintiffs Do Not Have First Amendment Right To Force the City of Hamtramck to Adopt their Speech as it Own, Nor Can Plaintiffs Demonstrate That They Were Denied a Right Protected by the First Amendment.**

Plaintiffs do not have a right under the Equal Protection Clause of the Fourteenth Amendment, the Michigan Constitution or Michigan Elliot Larson Civil Rights Act to force the City of Hamtramck to express itself in a particular way. In addition to being an expression of speech free from regulation entirely, the City's reasons for not flying certain flags furthers the City of Hamtramck's compelling government interest in avoiding an establishment clause violation. *See Summum,* 130 F.3d at 921; *Lamb's Chapel,* 508 U.S. at 394-95.

For these reasons and for all reasons stated elsewhere, Plaintiffs fail to state a viable equal protection claim.

**C.    The Plaintiffs Will Not Be Irreparably Harmed if the Court Denies their Request for a Mandatory Injunction, and the Balance of Harm Favors the City of Hamtramck Where an Injunction Would Force the City to Fly Every Requested Flag on Its Own Flagpoles, Even If the City is Ultimately Successful on the Merits.**

In the absence of an injunction, Plaintiffs clearly will not be irreparably harmed, and Plaintiffs not surprisingly do not make much of an argument to this Honorable Court in that regard.   Plaintiffs were removed from their unpaid, uncompensated, appointed positions on the Hamtramck Human Rights Commission on or around July 11, 2023.

However, the City of Hamtramck's policies and procedures would be drastically changed and harmed if suddenly it were forced to re-appoint Plaintiffs to the Hamtramck Human Rights Commission, and additionally be forced to accommodate the political and individual actions of Plaintiffs even when such contravene sound and reasonable City of Hamtramck actions and expressions, especially given that the City of Hamtramck itself may prevail on the merits of the matters.   Clearly, the balance of harms favors the City of Hamtramck, and the Courts should deny Plaintiffs' requests for injunctive and all relief.

III.    **CONCLUSION**


Wherefore, for the foregoing reasons, the Court should deny Plaintiff's motion for a preliminary injunction in its entirety.


Dated: January 12, 2024                          /s/ Odey K. Meroueh
                                                 Odey K. Meroueh P74640