## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

RUSS GORDON and
CATHY STACKPOOLE,

     Plaintiffs,

                                         2:23-cv-12812-DML-DRG

v                                     Hon. David Lawson

THE CITY OF HAMTRAMCK,
THE HAMTRAMCK CITY COUNCIL,
and MAYOR AMER GHALIB, in his
official capacity

     Defendants.

_____/

| | |
|---|---|
| MARC M. SUSSELMAN (P29481) | ODEY K. MEROUEH (P76460) |
| Attorney at Law | Meroueh & Hallman LLP |
| Attorney for Plaintiffs | Attorney for Defendants |
| 43834 Brandywyne Rd. | 14339 Ford Road, 2nd Floor |
| Canton, MI 48187 | Dearborn, MI 48125 |
| 734.416.5186 | (313) 582-76460 |
| marcsusselman@gmail.com | okm@mhatlaw.com |

_____/

## DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY DISPOSITION

      NOW COME Defendants, The City of Hamtramck, The Hamtramck

City Council and Mayor Amer Ghalib in his official capacity only, by and through

their attorneys, MEROUEH HALLMAN, LLP, and for the reasons below and more

fully articulated in the accompanying Brief request that this Honorable Court deny

Defendant's motion for partial summary judgement in its entirety and with prejudice,

1

and enter a judgment that the City of Hamtramck's resolutions 2023-82, 99 constitute government speech not subject to regulation nor violative of the equal protection clause nor the establishment clause.

1.  Defendants do not deny that Plaintiffs filed their initial Complaint on November 6, 2023. They filed their First Amended Complaint by right on November 17, 2023 and their Second Amended Complaint on June 24, 2024.

2.  On June 13, 2023, the City of Hamtramck unanimously passed resolution 2023-82, which specifically reads:

> WHEREAS, each religious, ethnic racial, political, or sexually oriented group is already represented by the country it belongs to; and
> WHEREAS, the City does not want to open the door for radical or racist groups to ask for their flags to be flown; and
> WHEREAS, this resolution does not in any way, shape or form infringe upon the fundamental right of an individual or business in the City of Hamtramck to engage in free speech. Nor does this resolution limit speech by public employees provided that such employees engage in such speech in a protected time, manner and place.
> NOW, THEREFORE, BE IT RESOLVED by the City Council of the City of Hamtramck, Wayne County, Michigan, that the government of the City of Hamtramck does not allow any religious, ethnic, racial, political, or sexual orientation group flags to be flown on the City's public properties, and that only, the American flag, the flag of the State of Michigan, the Hamtramck Flag, the Prisoner of War flag and the nations' flags that represent the international character of our City shall be flown.

> *Pl. Ex. 4, PageID.4765.*

3.  Plaintiffs Gordon and Stackpoole, both former members of the Hamtramck

Human Relations Commission, intentionally raised a flag not permitted by Resolution 2023-82 on or around July 9, 2023, in violation of the plain terms of the Resolution; they purposefully acted without convening a meeting of the Hamtramck Human Relations Commission, contrary to established policy and practice, knowing that they were exceeding the scope of their authorized discretion. Furthermore, they were aware that failure to adhere to the resolution could result in their removal from the Hamtramck Human Relations Commission. Pl. Ex. 12, PageID.5087, pg. 59.

4. The City Council removed Plaintiffs from the Hamtramck Human Relations Commission through a council resolution, citing their violation of Resolution 2023-82, which exposed the city to potential liability. Pl. Ex. 6, PageID.4881.

5. Defendants assert that the resolution passed on June 13, 2023, was government speech, or that even if not ruled as government speech, any of the subsequent and/or related actions taken in this matter do not violate any part of the First or Fourteenth Amendment.  Defendants further deny that they owe Plaintiffs any relief, equitable or otherwise.

6. Plaintiffs have submitted a statement of facts, largely untethered to the record, lacking citation to record evidence and, at times, completely at odds with documents and testimony obtained during discovery.

7. Plaintiffs' motion, in short, lacks merit and as such, Defendants' have refused concurrence of Plaintiffs' Motion.

**WHEREFORE,** Defendants request that this Honorable Court deny Plaintiffs' requested relief, in full, as well as grant whatever additional relief the Court deems appropriate at this time to Defendants.

Respectfully Submitted,

*Meroueh and Hallman, LLP*

By: /s/ *Odey K. Meroueh*
Attorney for Defendants
Odey K. Meroueh P76460
14339 Ford Rd., 2nd Floor
Dearborn, MI  48126
okm@mhatlaw.com
(313) 582-7469

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

RUSS GORDON and
CATHY STACKPOOLE,

     Plaintiffs,

                          2:23-cv-12812-DML-DRG

v                           Hon. David Lawson

THE CITY OF HAMTRAMCK,
THE HAMTRAMCK CITY COUNCIL,
and MAYOR AMER GHALIB, in his
official capacity

     Defendants.

_____/

| MARC M. SUSSELMAN (P29481) | ODEY K. MEROUEH (P76460) |
|---|---|
| Attorney at Law | Meroueh & Hallman LLP |
| Attorney for Plaintiffs | Attorney for Defendants |
| 43834 Brandywyne Rd. | 14339 Ford Road, 2nd Floor |
| Canton, MI 48187 | Dearborn, MI 48125 |
| 734.416.5186 | (313) 582-76460 |
| marcsusselman@gmail.com | okm@mhatlaw.com |

_____/

## BRIEF IN SUPPORT OF DEFENDANTS' RESPONSE TO
## PLAINTIFF'S MOTION FOR SUMMARY DISPOSITION
## ORAL ARGUMENT REQUESTED

## **Table of Contents**

Table of Authorities............................................................................................................. 8

Statement of Issues Presented............................................................................................9-11

Factual Background...........................................................................................................   12

Law and Argument..............................................................................................................18

    I. Hamtramck Resolution 2023-82 is government speech and not subject to regulation ..................................................................................................................20

        A. The Record Demonstrates That, Contrary To Shurtleff, The City Of Hamtramck Never Ceded Control Of The Flagpoles.  The Very Nature Of Establishing A Commission Which Had A Sole Purpose Was Of Tending To And Taking Care Of The Flagpoles Evidences The City's Intent To Control The Content And Meaning Of The Flags Being Raised.

            a. Whether the Forum Has Been Historically Used For Government     Speech.

            b. Whether the public would interpret the speech as being conveyed by the government.

            c. Whether the government has maintained control over the speech.

        B. The pride flag itself initially was hung at the behest of City Administration, not a resident.

        C. Even if it could be shown that the City of Hamtramck's flagpoles constituted a limited public forum, Resolution 2023-82 was viewpoint neutral and reasonable.

    II. Even If Resolution 2023-82 Were Found Not To Be Government Speech, It Is Not A Violation Of The Establishment Clause Or The Equal Protection Clause

As It Is Viewpoint And Content Neutral, And Even It Was Not Viewpoint And Content Neutral It Is Narrowly Tailored To Serve A Compelling Government Interest.
...............................................................................................28

    A. Applying The Test Of Strict Scrutiny Would Be Inappropriate For An Ordinance Allowing ANY Flag Of International Influence Or Character That Was Specifically Enacted To Promote Neutrality.
    B. Even If This Court Were To Find That The Resolutions Were Not Content And Viewpoint Neutral, The Resolutions Are Narrowly Tailored To Serve A Compelling Government Interest.
    C. Perhaps with the knowledge that the Resolution is Content and Viewpoint neutral, Plaintiffs assert that since the Councilmen who voted for the Resolution are Muslim, the Resolution itself must be geared against homosexuality in general.

III.  Plaintiffs were removed from the Hamtramck Human Rights Commission for failure to take direction from City of Hamtramck administration and not for expression of their First Amendment Rights……………………………..37

    a. Plaintiffs were free to express their first amendment rights, as did many in and around the City without repercussion.  Plaintiffs were terminated for failing to follow the terms of a newly enacted City resolution.

IV. Conclusion................................................................................39

## Table of Authorities

### Cases

*Dupree v Younger*, 598 U.S. 2 (2023)……………………………………………19
*Shurtleff v City of Boston* …………….…………………………..……21,23-27,30
*Pleasant Grove City* v. *Summum*, 555 U.S. 460, 467–469 (2009)………..20,23,30,37
*Walker v Texas Div., Sons of Confederate Veterans, Inc.,*
576 U.S. 200, 209-213 (2015)……………………………….……22,23,28,37
*Feldman v. Denver Pub. Schs., No. 1:23-cv-02986 (D. Colo. 2023)………22, 23, 26*
*Everett v Everett,* 319 Mich. 475, 481 (Mich 1947)…………………………..32
*DiLoreto v. Downey Unified School District Board of Educ.,* 196 F.3d 958, 969 (6th
Cir.)(1999) ……………………………………………………………………28
*Archdiocese of Washington v. Washington Metropolitan Area Transit Auth.,* 281 F.
Supp. 3d 88, 105 (D.D.C 2017)…………………………………………………..28
*Perry Ed. Ass'n v. Perry Local Educators' Assn.,* 460 U.S. 37, 46 (1983)…………28
*Good News Club v. Milford Cent. Sch.,* 533 U.S. 98, 106-7 (2001)………………..28
*Rosenberger v. Rector and Visitors of the Univ. of Va., 515 U.S. 819, 829 (1995).*28
*Make the Road by Walking, Inc. v Turner,* 378 F.3d 133……………………......28
*Hague v. Committee for Industrial Organization, 307 U.S. 496, 515 (1939)……….*29
*Menotti v. City of Seattle*, 409 F.3d 1113, 1131 (9th Cir. 2005)……………………30
*Christian Knights of the KKK*, 972 F.2d at 374………………………...………..30

### Statutes

Fed. R. Civ. Proc. 56…………………………………………………………..18

City of Hamtramck, Charter 5-01(b)(h)…………………………………………..37

### City of Hamtramck Resolutions

2013 – 102………………………………………………………………12, 24, 30

2023-82……………..9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25,
26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, ,38, 39,

2023-99……………..9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25,
26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, ,38, 39

## STATEMENT OF ISSUES PRESENTED

I.   **Was Resolution 2023-82 Government Speech?**

Yes, the City of Hamtramck actively controlled what flags were raised on its flagpole and in particularly through the establishment of the Hamtramck Human Relations Commission maintained control over the content and meaning of the forum at all relevant times.  S*t*rict scrutiny analysis is not applicable.

II.  **Even Should Resolution 2023-82 Be Found Not To Be Government Speech, Was It Content And Viewpoint Neutral?**

Yes.  This resolution permits literally any flag as long as it's of "international character."   As applied, the resolution has permitted any flag as long as its representative of a geographic region, without limitation otherwise.  How such a resolution could be seen as limiting any one religion or pushing any particular religion is not explained or supported by the evidence Plaintiff presents.  Further, as testified to by the councilmembers and Mayor, the resolution was enacted in response to the large number of requests they were receiving for flags flown in Arabic during Ramadan and Eid and other flags flown supporting causes that the Mayor and Council were worried might open the door to a request for a flag that became the source of hostility or violence.   The council enacted the resolution to take a neutral stance and make it clear to all residents in Hamtramck that the flags were not available for anything other than the Resolution enacted in 2013

prescribed.

### III.   Even if Resolution 2023-82 was neither content or viewpoint neutral, was the Resolution narrowly tailored to fulfill a compelling government interest?

Yes.   The Resolution in question in this matter, Resolution 2023-82, was enacted with the intention of quelling an increasingly hostile environment. Several councilmen as well as Mayor Ghalib provide accounts of residents using the raising of the pride flag to justify requesting other flags and forms of speech that did not fit within the parameters of the resolution, some that would have caused further unrest and potentially incite violence.  Protecting the community and promoting public health and wellbeing is a compelling government interest.

### IV.   Were Plaintiffs Removed From Their Positions With The City Of Hamtramck Human Relations Commission in Deprivation of their Constitutional Rights?

Clearly no.  The City of Hamtramck removed Plaintiffs from their positions for intentionally thumbing their noses at a newly enacted resolution.  There are many within the City of Hamtramck from employees to contractors to residents to business owners, who have expressed their disfavor of the resolutions in this matter.  Plaintiffs have presented no evidence that the city retaliated against any of the opponents to council's resolution.  Had Plaintiffs expressed their opposition to the resolution in a manner that did not involve them ignoring Commission procedure and City of Hamtramck enacted law, they would have remained members of their commission in good standing.

## Factual Background

The City of Hamtramck, by and through the power of their City Council and Mayor, established a Human Relations Commission (hereinafter referred to as "Commission") consisting of twelve appointees of the Council, that met regularly "to plan valuable activities to promote the international character of the City". Pl. Ex. 1, PageID.4753. The Commission was established by Ordinance of the City Council and ratification by the mayor under the authority and control of the City of Hamtramck. *Id.* In 2013, the City Council and mayor passed a resolution that authorized the Human Relations Commission to proceed with a "flagpole restoration project". Pl. Ex. 1, PageID.4753. Highly relevant to the present case was the title of the resolution, "Resolution allowing the Human Relations Commission to Restore and Maintain City Flagpoles and Install Flags and Plaques to Represent the **International Character** of the City of Hamtramck". *Id.*  To accomplish the latter goal, the Commission was "authorized to solicit funds from interested parties, individuals or businesses for the sole purpose of the restoration and maintenance of city flagpoles, purchase of flags and plaques and ongoing maintenance of the project." *Id*.

Plaintiff Gordon was a member of the Commission since the City Council gave its approval for the Commission's enactment. Pl. Ex. 12, PageID.5076, Pg.14.    Plaintiff Stackpoole joined the Commission much later in 2023 after current Mayor Amer Ghalib appointed her: "He (Gordon) had trouble getting the people who were appointed by the former Mayor to have a meeting. So I removed those inactive members so he can make

it easy for him to have a quorum…I appointed new people regardless of their background. And I know that they supported LGBT, including this member right here" (indicating Stackpoole). Pl. Ex 11, PageID.5038, pg. 35.

In stark contrast to the claims made in Plaintiff's brief, Resolution 2013-102 makes no comment or implication whatsoever as to the Commission's authority, sole or otherwise, as is alleged continuously without authority in Plaintiffs' Motion. Pl. Ex. 1, PageID.4753. Even Plaintiff Gordon admitted that the commission was enacted and has at all times operated under the authority of the City of Hamtramck: "We negotiated a resolution. And it was passed. And we were authorized, then, to repair … and solicit funding, which were pretty successful in doing." Pl. Ex. 12, PageID.5076, pg. 16-17. "[U]nless you consider our commission's part of the City of Hamtramck, **which it is**…" *Id* pg. 39. (emphasis added).

Tasked with restoring then choosing flags of international character to fly, the Commission, using census data selected and voted for every single flag to fly on the city flag poles, highlighting countries from which residents had emigrated. *Id* pg.'s 17-19. Occasionally through the years the Commission would field requests from residents and then the Commission itself would decide whether to grant the request and fly the requested flag. *Id* pg.'s 19-20. On at least one occasion the Commission decided to reject the request of a resident whose request to fly the Serbian flag otherwise fit within the "international character" parameters of the resolution. *Id* pg.'s 32-33.

Plaintiff Gordon initially claimed that the Serbian flag was rejected for various

reasons: "we had two Serbian families in Hamtramck, and we had- Bosnia was a major presence". *Id* pg. 33. Then his reasoning shifted from blaming Bosnians to claiming the request to fly the flag was not "legitimate" since he claimed it was requested because the requestor "had a bone to pick with one of our Commissioners and she wanted to start trouble". *Id.* Finally, Plaintiff Gordon explains "The reason we denied it was because there was so much – there would have been violence in Hamtramck. So we – we avoided the issue by voting it down". *Id* pg. 69.  Unlike in *Shurtleff,* the Commission here had a history of rejecting controversial flags even when they fit within the parameters of the Resolution. *Id.*

This Commission had a mechanism, whether formal (such as the 2013 census-driven flags that were formally voted on) or informal, whereby appointees of the City Council and Mayor would decide if a flag was suitable to fly: "It was fairly informal and relaxed. If we had a meeting or a quorum, we might talk about it, but not a whole lot. I'd say you know, that so and so on the street had asked to have this flag put up, and **nobody had any objection**, so we did it. It wasn't formal." Pl. Ex. 12, PageID.5088, pg. 62

In late 2021, solely at the direction of then City Manager Kathy Angerer and without meeting as a Commission to vote nor discuss the matter, Plaintiff Gordon raised a pride flag on one of the flag poles located on Jos. Campau.  *Id pg. 40*.  The pride flag was the first flag flown by the Commission that did not represent an international country or region of *international character*.  Pl. Ex. 21, PageID.5460 (list of all flags flown by Commission on City flagpoles). After going through a list of all the flags flown

throughout the years, all of international character, Plaintiff Gordon was then asked if the Pride flag was of international character or referred to a nation, he responded "It doesn't have to, that's not what we're talking about here. If you're telling me that the folks – the gay folks come from outer space, which I think the Mayor believes, then maybe you're right. But they're not. It's international. You can twist the words, you can make it whatever you want, but its bulls***". *Id.*

Following Mayor Ghalib's election in fall of 2021, he pressured the Commission to follow their own procedure before flying the pride flag once again the following year and simply to meet and vote on the flag as they had done for other requested flags in the past: "I kept it (the pride flag) flying for four months, but I told him the next year we have to do it the right way.  You have to have a meeting with the Human Relation (sic) Commission.  You have to have a quorum.  To help him to do that, I added more members to the Human Relation Commission." Pl Ex 11, PageID5035, pg. 25. Mayor Ghaleb testified, "He had no right to act on an individual capacity to add flags or remove flags. He should have held a meeting for every decision. And he should have a quorum in every meeting or what was the purpose of having a Human Relation if he makes the decisions alone…". *Id.* The Mayor even went so far as to appoint Plaintiff Stackpoole herself and others to the Hamtramck Human Rights Commission, knowing that she was a member and an advocate of the LGBTQ+ community to assist Plaintiff Gordon in obtaining the requisite votes. *Id* pg. 35.

On June 13, 2023, the City of Hamtramck passed Resolution 2023-82, titled,

*Resolution to Maintain and Confirm the Neutrality of The City of Hamtramck Towards its Residents.* Pl Ex. 4, PageID.4765. In relevant part, the Resolution states:

> WHEREAS, each religious, ethnic racial, political, or sexually oriented group is already represented by the country it belongs to; and WHEREAS, the City does not want to open the door for radical or racist groups to ask for their flags to be flown; and WHEREAS, this resolution does not in any way, shape or form infringe upon the fundamental right of an individual or business in the City of Hamtramck to engage free speech. Nor does this resolution limit speech by public employees provided that such employees engage in such speech in a protected time, manner and place.
> NOW, THEREFOE, BE IT RESOLVED by the City Council of the City of Hamtramck, Wayne County, Michigan, that the government of the City of Hamtramck does not allow any religious, ethnic, racial, political, or sexual orientation group flags to be flown on the City's public properties, and that only, the American flag, the flag of the State of Michigan, the Hamtramck Flag, the Prisoner of War flag and the nations' flags that represent the international character of our City shall be flown. *Id.*

The City Council meeting wherein Council passed the latter resolution was heavily attended by vocal participants both supporting and opposing the passage of the resolution. Pl. Ex. 15, PageID.5239 pg. 62. Of residents of Hamtramck that spoke at public comment, 15 opposed the resolution and 11 supported it. *Id* pg. 174. One resident who attended the meeting stated he wished to fly a flag stating in Arabic that *there is no God but Allah and Muhammad his messenger* but was told that such a flag would not be permissible following the passage of the resolution. Pl. Ex.5, PageID.4832, pg.65. Mayor Ghalib stated, "we are not targeting one group or another. Those people who accused me of hating them, half of my boards and commissions are either LGBTQ or supports of LGBTQ and I know them one-by-one…I never fired anybody who belonged to LGBTQ." *Id.*

15

Councilman Mohammed Hassan added: "Here, our fear of the religious faith group came to us beg on the floor, to the flag, their own flag to the City of Hamtramck. We said, 'No, we don't want individual. Everybody to do the same practice.' It is going to be chaos. It looks ugly, and it is going to be division. We don't want that kind of situation here.". *Id* pg. 71. Here Councilman Hassan is attempting to explain that by tailoring the resolution towards neutrality, they were attempting to prevent chaos, violence, or any negative results of politicizing the flag poles. *Id.*

After the Council enacted the 2023 resolution, Plaintiffs Gordon and Stackpoole simply refused to follow a lawful order to refrain from flying a flag that did not comply with the terms of the resolution; and as a result, the City removed Plaintiffs Gordon and Stackpoole from the Commission. Pl. Ex. 6, PageID.4881.   At least 3 city employees expressed their dissatisfaction with the passing of the resolution by flying pride flags in their offices at city hall in full view and not one "suffered any negative consequences as a result".  Pl. Ex. 9, PageID.4986, pg.'s 94-96.

## LAW AND ARGUMENT

**Plaintiffs** rest their entire motion on false propositions and accusations and mischaracterizations of fact and law.  Resolution 2023-82 and Resolution 2023-99 both clearly constitute government speech and, therefore, neither resolution is subject to the levels of scrutiny alleged in Plaintiffs' Motion.  Pl. Ex. 4, PageID.4765. Plaintiffs—particularly through the testimony of Plaintiff Gordon—devoted significant time informing the Court about the extent of control the City of Hamtramck

maintained, primarily through its Human Rights Commission acting under the general authority of the City, over the use of City-owned flags and flagpoles. Pl. Ex. 12, PageID.5076, pg. 16.

However, even if found to be a regulation of private speech, Resolution 2023-82 is content and viewpoint neutral and the Council enacted it with such intent. Pl. Ex. 4, PageID.4765. The resolution uses neutral language. *Id.* It does not target the LGBTQ+ community.; rather, it applies equally to all affinity groups promoting any kind of sexual preference or identity. *Id.* Under the language of the resolution, for example, flags promoting the National Coalition for Men (NCFM), A Voice for Men, National Organization for Women, Women's Liberation Front (WoLF), and other gender-based affinity groups are banned from flying their flags on the same measure as the ban at issue in this case.

A central tenet of the Plaintiffs' case involves their contention that the resolution promotes Islamic ideals; however, the resolution bans Islamic-themed flags along with those of any other religious communities like Right to Life, Council on American-Islamic Relations ("CAIR"), Muslim Legal Fund, Focus on the Family, Moral Majority, and many more. *Id.*  In short, City administration and officials have and will testify that Resolution 2023-82 was enacted specifically with the intention of remaining neutral with regard to content and viewpoint.  Pl. Ex 11, PageID.5032. Lines 8-21; 5033 pg. 15 Lines 12-19, pg. 17 Lines 7-9 and 16-25.

Plaintiffs were not terminated for exercising their first-amendment rights and have

no evidence in support of such allegation other than mere conjecture. Pl. Ex. 6, PageID.4881. Many individuals, some city employees or members of various city commissions expressed their displeasure with Resolution 2023-82. Pl. Ex. 9, PageID.4986, pg.'s 94-96. All were allowed to challenge the resolution in question without repercussion or comment. *Id.* The record is bereft of any instance where the city punished them for such acts. *Id.*

This Honorable Court in viewing the evidence in the light most favorable to Defendants in this matter MUST dismiss Plaintiffs' Motions in their entirety.

## **STANDARD OF REVIEW**

Fed. R. Proc. 56 requires a district court to enter judgment on a claim or defense if there is, "no genuine dispute as to <u>any</u> material fact and the movant is entitled to judgment as a matter of law.  Fed. Rule Civ. Proc. 56(a).  Dupree v Younger, 598 U.S. 2 (2023).  This Honorable Court is required to view the evidence in this matter in the light most favorable to the non-moving parties, which is here the Defendants City of Hamtramck, City of Hamtramck City Council and Mayor Amer Ghalib in his official capacity.

## I.    **Resolution 2023-82 is Government Speech And Not Subject to Regulation.**

The Free Speech Clause restricts government regulation of private speech, but it does not regulate government speech and does not prevent the government from declining to express a view. See *Pleasant Grove City* v. *Summum*, 555 U.S. 460, 467–469 (2009) (the

display of a permanent monument in a public park is not a form of expression to which forum analysis applies.  Instead, the placement of a permanent monument in a public park is best viewed as a form of government speech and is therefore not subject to scrutiny under the free speech clause.) *Id* at 460.  In *Summum,* the U.S. Supreme Court unanimously agreed with the Federal District Court in holding that the City of Pleasant Grove, Utah, had the right to commit viewpoint discrimination with regard to permanent monuments (such as a flagpole) erected on public property because "permanent monuments displayed on public property typically represent government speech."  See Id.

The government must be able to decide what to say and what not to say when it states an opinion, speaks for the community, formulates policies, or implements programs.  *Id* at 467-469.

### A. The Record Demonstrates That, Contrary To Shurtleff, The City Of Hamtramck Never Ceded Control Of The Flagpoles.  The Very Nature Of Establishing A Commission Which Had A Sole Purpose Was Of Tending To And Taking Care Of The Flagpoles Evidences The City's Intent To Control The Content And Meaning Of The Flags Being Raised.

The City of Hamtramck has maintained significantly more control over the flagpoles than did the City of Boston in the *Shurtleff* matter. *Shurtleff v. City of Boston*, 142 S. Ct. 1583, 1584 (2022).  In *Shurtleff*, Boston adhered to a "rubber stamp" policy for approving flags to be flown outside Boston City Hall, largely because of the sheer volume of requests the City received, allowing groups and individuals to display virtually any flag on the flagpole. *Id.* Between 2005 and 2017, about 50 unique flags for 284 different ceremonies adorned the flag outside of Boston City Hall, without so

much as a comment from anyone or any commission of the City of Boston. *Id.* In 2017, Plaintiff applied to fly a Christian-themed flag, and the city denied his request. *Id.*

The United States Supreme Court set forth the test for determining the constitutionality of the city's action focusing on whether the city "shaped or controlled the flags 'content and meaning; because "such evidence would tend to show that Boston intended to convey the flags' message as its own."  See *Shurtleff at 1584.* To determine whether a governmental entity "shapes or controls" content and meaning, courts generally assess the following:

1)  Whether the forum has been historically used for government speech;

2)  Whether the public would interpret the speech as being conveyed by the government; and

3)  Whether the government has maintained control over the speech.

*VDARE Found v. City of Colorado Springs*, 11 F. 4th 1151, 1170 (10th Cir. 2021).  In determining whether speech qualifies as government speech, the Supreme Court looks additionally to the history of the expression at issue, the public's likely perception as to who (government or private person) is speaking; and (again) the extent to which the government has actively shaped or controlled the expression.  *Walker v Texas Div., Sons of Confederate Veterans, Inc.,* 576 U.S. 200, 209-213 (2015).

**A. Whether the Forum Has Been Historically Used For Government Speech.**

Flag flying in and of itself, and in particular at the seat of the government, is

traditionally a form of government speech.  *Shurteff at 2 (2022) ("*Flags evolved as a way to symbolize communities and governments.  Not just the content of a flag, but also its presence and position have long conveyed important messages about government.  Flying a flag other than a government's own can also convey a governmental message"). *Id.*  No less familiar, a flag at half-staff tells us that the government is paying its "respect to th[e] memory" of someone who has died. 4 U. S. C. §7(m). (Congress has explained, across several sections of the U. S. Code, the meaning we should take from the "position," "manner," "time," and "occasions" of the American flag's display. §§6, 7.)

Courts have rejected the proposition that a finding of government speech requires "the government to take control over previously private expression, control every aspect of its design and maintenance, and require relinquishment of ownership rights" as a misreading of Summum and Walker. Shurtleff at 16 (2019); see also Sutliffe v. Epping Sch. Dist., 584 3d 314, 331 (1st Cir. 2009) (finding government speech on a town webpage where the town controlled the content of its message by exercising final approval authority over the selection of the hyperlinks on the website); cf. Ridley v. Mass. Bay Trans. Auth., 390 F. 3d 65, 82 (1st Cir. 2004) (holding that public forum did not exist where MBTA policy evidenced clear intent to maintain control over forum)(internal quotations omitted). From the beginning of Plaintiff Russ Gordon's deposition it became ironically clear that the City of Hamtramck through the very administration of the Hamtramck Human Rights Commission, maintained control

21

over the flags in a way similar to the Slavens School in *Feldman v Denver Public Schools,* in that no one in the community would have ever alleged the flag to not be government speech, such was the City of Hamtramck's control over the flagpole. *Feldman v. Denver Pub. Schs., No. 1:23-cv-02986 (D. Colo. 2023)* (in which the U.S. District Court for the District of Colorado dismissed Plaintiff's claims of free speech encroachment under FRCP 12(b)(6), holding that government speech could not be regulated and that the pride flag in question constituted government speech). The very fact that there was a Hamtramck Human Rights Commission at all to oversee the flagpoles, something most municipalities do not feature, is an indication of Hamtramck's intent to and practice of control over the flagpoles and is something completely absent from the record in *Shurtleff.* For the first years of the Commission's existence, the Commission itself decided which flags to fly, and made that decision based on the Census Tract of the City and the international regions that Hamtramck residents represented. Pl. Ex. 12, Page ID# pg. 83-84. In fact, most of the flags that have been flown on the flagpoles on Jos. Campau are from countries that the Commission decided to fly bases on the Census Tract. *Id.* pg.'s. 74-75. At other times the Commission raised the Irish flag at the behest of one of its own members, and at all times maintained more control over the flagpoles in question than Plaintiffs would ever dare to admit. *Id. pg. 75.* In *Feldman* Plaintiffs tried to argue that Denver Public Schools relinquished control over the speech at issue (a pride flag) because the school's internal policy permits employees to display the pride flag. *Feldman v.*

*Denver Pub. Schs., No. 1:23-cv-02986 (D. Colo. 2023)*

Even on the occasions when residents would find Plaintiff on the Commission's ladder raising or lowering another flag request that the Commission should fly certain flags, the Commission still considered and voted on the request; on at least one occasion Plaintiff himself admits that the Commission received a request for a flag ultimately rejected after one of the Commission members expressed disfavor towards the flag.  Pl. Ex. 12, Page ID# pg. 83-84

**B) Whether the public would interpret the speech as being conveyed by the government.**

Plaintiff's apparent misunderstanding of the relationship between the Commission and the City of Hamtramck—an ambiguity that seems somewhat intentional and contrived to satisfy the *Shurtleff* factors—does not alter the clear record. The evidence demonstrates that the public was fully aware that these flagpoles were owned by the City of Hamtramck and that any flag flown on them was done so on behalf of the city.

In Shurtleff, the City of Boston essentially lost control of the forum because it failed to shape or control the flags content and meaning.  See *Shurtleff* at pg. 3.  In addition to city and national and international flags, the City of Boston flew flags requested by and in support of local private businesses such as a local bank, for example. *Id.* On another occasion the mayor of Boston lost a bet to the Mayor of Toronto, Ontario, and flew a Toronto Blue Jays flag. *Id.* Additionally, the City of

Boston in *Shurtleff* advertised to the public that it sought to "accommodate ALL Applicants" who wished to hold events at Boston's 'public forums," including on Boston's City Hall Plaza. *Id*.  The City of Boston's application form asked only for contact information and a brief description of the event, with proposed dates and times. *Id*.  The city employee who handled applications testified that he did not request to see flags before the events. *Id*.  Indeed, the city's practice was to approve flag raisings without exception—that is, until petitioners' request.  *Id*. At the time, Boston had no written policies or clear internal guidance about what flags groups could fly and what those flags would communicate. *Id*.

The City of Hamtramck in Resolution 2013-102 contrarily had very clear and concise policy guiding its Commission as to which flags should be considered. Pl. Ex. 1, PageID.4753. Only those flags of international character could be requested by the public, but it was not as though there was an application process or invitation from the City of Hamtramck or the Commission itself for the public to come in and start submitting applications for their preferred flag. *Id.* Since the 2013 resolution the role of the Commission was essentially that the Commission chose which flags to fly, and the public was welcome to request a flag if it fit within the guidelines of Resolution 2013-103. *Id.* Even then, however, the Commission may refuse to fly a flag simply, well, because. Pl. Ex. 12. PageID.5080, 32-33.  Regardless of the Commissions reason for refusal, the fact that a flag could be requested that fit within the parameters of the Resolution, and still get denied, demonstrates a consistent control that the City of

Hamtramck kept over the forum that was nonexistent in *Shurtleff*. *Id.*

### C) Whether the government has maintained control over the speech.

Regarding the third factor of maintaining control, the Supreme Court in *Shurtleff* found that Boston had created a public forum due to its practice of approving flag raisings without exception and its admission that it "hadn't spent a lot of time really thinking about its flag-raising practices until this case." *Shurtleff*, 596 U.S. at 256–57. In contrast, the City of Hamtramck took significant steps to maintain control over its flagpoles. Pl. Ex. 1, PageID.4753. It established the Hamtramck Human Rights Commission, whose sole purpose was to oversee the flagpoles, held meetings to decide which flags would be flown, and ensured that the Commission actively fulfilled its responsibilities. *Id.* At all relevant times, the Commission maintained control over the flagpoles, occasionally considering input from the public. Pl. Ex. 12, Page ID# pg. 83-84. The two cases bear no meaningful similarities regarding the respective cities' control over the content and meaning of the flags, which the Court in *Shurtleff* identified as the most critical factor in determining whether the flagpoles represented a public forum or government speech. *Shurtleff*, 596 U.S. at 10.

### B. The Pride Flag Itself Was Hung At The Direction Of City Administration.

The fact that Plaintiff Gordon sometimes used his own resources at times while fulfilling his role for the commission is not something the Supreme Court would have found relevant as to the question of maintaining control over the forum. See *Summum*

*555 U.S. at 470-473,* where monuments displayed in a public park constituted government speech even though privately funded.  Pl. Ex. 13, Page ID# 5078, pgs. 23.

Certainly however, that the Pride Flag itself was first flown – in 2021 nearly ten years after the enactment of the Commission - without public request and was installed solely at the encouragement of former City Manager Kathy Angerer herself shows that this forum was at all times maintained within the City of Hamtramck's control.  Pl. Ex. 12 PageID.5081, pg. 36.  Plaintiffs then installed the flag individually and without even holding a meeting with the Hamtramck Human Rights Commission.  Pl. Ex. 11, Page ID# 5034, pg. 19.

Using this Court's analysis in *Shurtleff* and most recently in *Feldman,* the forum in this matter is plainly one which the City of Hamtramck has never ceased maintaining control over.  In viewing the evidence in this matter in the light most favorable to the nonmoving party or parties, the Plaintiffs fall painfully short in their claims that Resolutions 2023-82 and 99 should not be found to be government speech, and this Court should find the levels of scrutiny enforced on government regulation of private speech to be entirely inapplicable here.

"[W]hen the government speaks, it is not barred by the Free Speech Clause from determining the content of what it says.  *Walker v. Texas Div., Sons of Confederate Veterans, Inc.,* 576 U.S. 200, 207 (2015).

**II.      Even If Resolution 2023-82 Were Found Not To Be Government Speech, It Is Not A Violation Of The Establishment Clause Or The Equal Protection Clause As It Is Viewpoint And Content Neutral, And Even It**

**Was Not Viewpoint And Content Neutral It Is Narrowly Tailored To Serve A Compelling Government Interest.**

Even if this Honorable Court determines that Resolution 2023-82 does not qualify as government speech, the resolution neither promotes any religion nor endorses one. Pl. Ex. 4, PageID.4765. Instead, it is narrowly tailored to address the compelling government interest of maintaining neutrality on a contested issue with public safety implications. The Equal Protection Clause does not permit a government entity to be selective in the views which it accepts and/or permits to be expressed.  Here, the City isn't selective at all, and is inviting expression without limitation, provided it's within the theme of the ordinance.

A. **Applying the test of strict scrutiny would be inappropriate for an ordinance allowing ANY flag of international influence or character specifically enacted to promote neutrality.**

Even should the raising of flags on City of Hamtramck flagpoles be considered private speech, Resolution 2023-82 is constitutional because it is both reasonable and viewpoint neutral in that it does not discriminate between viewpoints at all, but excludes all flags not explicitly listed as appropriate regardless of viewpoint.  *Id.* Governments may reserve a non-public or a limited public forum to the limited and legitimate purposes for which it was created by reserving it for certain types of groups or for discussion of certain topics if the restrictions are both reasonable and viewpoint neutral.  *Perry Ed. Ass'n v. Perry Local Educators' Assn.,* 460 U.S. 37, 46 (1983); *Good News Club v. Milford Cent. Sch.,* 533 U.S. 98, 106-7 (2001).  The City of

Hamtramck in resolution form or otherwise may exclude categories of speech, unless "its distinction is not 'reasonable in light of the purpose served by the forum,' . . . [or] it discriminate[s] against speech on the basis of its viewpoint. *Rosenberger v. Rector and Visitors of the Univ. of Va., 515 U.S. 819, 829 (1995)*. Courts have specifically identified religion as a subject that the government may exclude from a forum while remaining viewpoint neutral if all speech about religion is excluded and not just particular religious viewpoints or religious viewpoints on otherwise permissible subjects. *DiLoreto v. Downey Unified School District Board of Educ.,* 196 F.3d 958, 969 (6th Cir.)(1999); *Archdiocese of Washington v. Washington Metropolitan Area Transit Auth.,* 281 F. Supp. 3d 88, 105 (D.D.C 2017).

Here, the City of Hamtramck's expression of speech in Resolution 2023-82 is consistent with the above authorities. Unlike in cases where the government refused to allow expressions of a religious perspective, such as *Shurtleff*, here the City seeks to exclude all flags not included in the terms of the resolution, religious or political or otherwise, and is doing so only with regard to City flagpoles which have historically been used to express government speech. *Make the Road by Walking, Inc. v Turner,* 378 F.3d 133, *citing Cornelius,* 473 U.S. at 809. ("[W]here allowing private expression in a nonpublic forum may imply government endorsement of that expression, limiting or excluding speakers may be reasonable."). Additionally, the City of Hamtramck's interest in avoiding an Establishment Clause violation demonstrates a compelling government interest. *Summum,* 130 F.3d at 921.; See Pl.

Ex. 11, Page ID#5040, pg. 42.

Plaintiffs seek to have this Court apply strict scrutiny review to the City of Hamtramck's decision to refrain from raising certain non-geographical flags on its flagpole, apparently regarding the flagpole as either a traditional public forum or a designated public forum. As noted above, the City's flagpole is not a traditional public forum under First Amendment jurisprudence, because, unlike a street or a park, it is not "immemorially...held in trust for the use of the public, and, time out of mind...used for purposes of assembly, communicating thoughts between citizens, and discussing public questions." Hague v. Committee for Industrial Organization, 307 U.S. 496, 515 (1939) at 515. If the flags raised by the City are viewed as private speech, as the City contests but assumes for the purposes of this section of its memorandum, the City's flagpole should not be viewed as a designated public forum because the City has not opened the forum to any type of private speech, but rather has restricted the forum by adopting a policy and practice of refraining from flying non-secular flags. Pl. Ex. 4, PageID4765. Therefore, the flagpole would be more properly viewed as a limited public forum or a non-public forum.

Even if Resolution 2023-82 was found to be a restriction on private speech for which the City of Hamtramck had no compelling governmental interest in avoiding an Establishment Clause violation (it would), the categorical exclusion of the plain language of the Resolution in no way shape or form violates the Plaintiffs' constitutional rights.

**B. Even If This Court Were to Find That The Resolutions were Not Content and Viewpoint Neutral, the Resolutions are narrowly tailored to serve a compelling government interest.**

Here, the City of Hamtramck was aware of the pitfalls of *Shurtleff* before Resolution 2023-82 was enacted. Pl. Ex. 11, PageID , pg.42. Mayor Ghalib and the City Council wanted to make sure the City of Hamtramck kept control of the flags, and the ordinance was written in a way that was anything but selective. *Id.* Courts have traditionally recognized that governments have a compelling state interest in ensuring public safety and order at public events. Grider, 180 F3d at 749; *See Menotti v. City of Seattle*, 409 F.3d 1113, 1131 (9th Cir. 2005) ("[M]aintaining public order...is a core duty that the government owes its citizens."); *Christian Knights of the KKK*, 972 F.2d at 374 (insisting that government "must have some leeway" to act "for the protection of participants...and others in the vicinity"). Here in this case, the Mayor and City Administration in contemplation of the growing fervor in the City attached to the flags as well as aware of the Court's ruling in *Shurtleff,* enacted Resolution 2023-102 (1) with policy specifically aimed at maintaining control over the flagpoles, and (2) did so with the intention of promoting maintaining public order. Pl. Ex. 18, Page ID# 5040, pg. 43., pg. 86. The City of Hamtramck had the compelling government interest of keeping its citizens safe and narrowly tailored its Resolution to serve that specific interest. Resolution 2023-82.

**C. Perhaps with the knowledge that the Resolution is Content and Viewpoint neutral, Plaintiffs assert that since the Councilmen who voted for the Resolution are Muslim, the Resolution itself must be geared against**

**homosexuality in general.**

In a true twist of irony and quite frankly, prejudice, Plaintiffs actually argue to this Honorable Court that the Resolutions in this matter violate the Equal Protection clause or Establishment Clause because the Religion of Islam is itself inherently homophobic and that by extension, each councilman who voted for the resolution was doing so in violation of the establishment clause and in consideration of their own prejudices.

During their respective depositions, the Councilmen made clear that they were each approached by residents of all ethnicities and seemingly, denominations in support of Resolution 2023-82.  Pl. Ex. 13, Page ID#5139, pg. 77; #5141, pg. 82.; 5146, pg. 105; Pl. Ex. 11, Page ID#5033, pg. 17.   Yet Plaintiff's motion solely focuses on Islam in such a way to paint the inaccurate and offensive picture that this Resolution was supported only by Muslim Arabs and was opposed only for religious purposes, when in fact the residents who approached councilmen in support of the resolution exhibited diversity in ethnic origins and did not claim support of the resolution in the name of any religion. *Id.*

Plaintiff continues his tradition in this matter of twisted cherry picking from the record and from caselaw in an attempt to turn this claim and situation into something that it isn't.  Over and over, for example Plaintiff makes the fallacious assertion that the other councilmembers silence following Councilmember Chowdhury's statement during the council meeting in which Resolution 2023-82 represented assent to everything he said.  Then Plaintiff cites to a real estate case in which one of the parties

made a material statement regarding the mental fortitude of one of the parties which went unobjected to, and which the Court found would have objected to by a reasonable person disagreeing with the sentiment. *Everett v Everett,* 319 Mich. 475, 481 (Mich 1947). Plaintiff would have this Court believe that silence in all fashions and mediums constitutes approval including during votes which occur during city council meetings, which is so far from the plain reading of *Everett* that there is simply no way of characterizing such intentional misrepresentation to this Honorable Court.

Such is far from the only time that Plaintiffs attempt to mislead this Honorable Court, but where Plaintiffs really start to go awry is in their ludicrous and quite frankly prejudiced attempt to lump homophobia into the religion of Islam as though it's a foundational belief or commandment of every Muslim or person from an Arab speaking region of the world, or that this resolution was all the work of some Imam somewhere.  Pl. Ex. 14, Page ID#'s 5086, pg. 57, 5084, pg. 49

Plaintiff argues to this Honorable Court that Islam itself is inherently homophobic and that by extension, each councilman who voted for the resolution was doing so in violation of the establishment clause, notwithstanding the testimony of each councilman, which Plaintiff seemed unwilling to accept.  Pl. Ex. 11, Page ID# 5043, pg. 51.

Plaintiffs seemed unaware or maybe simply didn't care that categorically applying such a standard to ALL of Islam is not only woefully inaccurate, but incredibly ignorant given the various sects and cultures that are found within Islam

and within the City of Hamtramck itself.  Plaintiff wishes to paint a picture of Mayor Ghalib as a Muslim mayor attempting to enact Muslim rule over the City of Hamtramck, when nothing could be further from the truth.  *Id.*, pg. 57.

When pressed, and they were repeatedly by Plaintiff's counsel, the record reflects the same answer from each of the councilmen, despite Plaintiff's best attempts to corner, intimidate and misquote the councilmen, they all answered that a person's sexual preference is that person's personal business and they had no qualms  one way or the other, like the politicians that they all are.  Pl. Ex. 18, Page ID#, pg. 43., 104, 107; Pl. Ex. 15, Page ID# 3334, pg. 21.  Pl. Ex. 16, Page ID#3419, pg. 18.

Mayor Ghalib and Councilman Hassan's testimony was mirrored by that of each other councilmen in that none of them view Islam as requiring prejudiced views against Islam, or even that any judgement is passed at all.  Pl. Ex. 15, Page ID#3334, pgs. 21-22.   Even when Plaintiff was able to get Councilman Alsomiri to compare being gay to smoking at one point, he was quick to mention that he has homosexual friends that he enjoys doing business with and hanging out with, and that he passes no judgment on the homosexual lifestyle.  Pl. Ex. 13, Page ID# 5125.

Plaintiffs went on in several depositions to insert their own testimony regarding the tenants of Islam attempting to impute their interpretation upon the deponents; however, after review of Plaintiff's own deposition exhibit materials, it seems Plaintiff failed to notice that the materials' conclusion seemed to make the opposite point he wished to, namely that Islam was inherently homophobic: "**an unbiased and neutral**

**reading of the Qur'an…establishes recognition of LGBT rights emphasizing sexual and gender diversity**." Pl. Ex. 26, PageID.5610, pg. 50. (Emphasis added).

Plaintiff argues that that this Honorable Court should rule that because there are some residents who may be against the pride flag in consideration of religious connotations, then the councilmen who voted for the resolution did so in violation of the establishment clause. Such a ruling would surely stretch the authority of Courts to delve into the religious motivations and considerations of elected officials and even residents in such a way that would surely violate the Establishment Clause itself.

What Plaintiff is asking for, maybe without realizing it, is for this Court to undermine the entire American system of voting privacy and to rule that any expression of religion, from a Mayor or City Councilmember or resident even, is a violation of the establishment clause. Or that any vote, no matter the context, could be opened and reviewed to examine the intent of the voters. What if a candidate for Mayor who happened to be pro-choice lost an election in a municipality full of Catholic voters? Plaintiff would have each voter deposed to determine whether the vote or lack thereof was due to that voter's religious beliefs, as Plaintiff did in councilmen's depositions. Pl. Ex. 18, PageID.4506, pgs. 44-45. In effect he is arguing that the establishment clause should only protect speech promoting Atheism, and any speech that comports with religious ideologies or customs must inherently then be considered unconstitutional. See Pl. Ex. 18, PageID.4506, pgs. 44-45. Plaintiff's questioning of Councilmen Hassan's faith consists of more than 20 pages of deposition

testimony, including questions about how many times Councilman Hassan prays each day, how many times Councilman Hassan has read the Quran, and more. *Id.* . Plaintiffs put each councilman through the same inquisition. Pl. Ex. 14, Page ID 3290, pgs. 17-20; Pl. Ex. 16, Page ID# 3419, pg. 19.

A pride flag would not be appropriate under Resolution 2023-82 in the same way that a flag supporting another political stance would not be appropriate. Both Resolutions 2023-82 and 2023-99 stand the test of strict scrutiny, as both were passed in the consideration of, if anything at all, quelching the requests that had been coming into the Mayor and council's offices for flags which could be seen as hostile or advocating for a position hostile to some residents (requests which have all been summarily denied). Pl. Ex.. 11, Page ID#5033, pg. 17; Pl. Ex. 14, Page ID# 3299, pgs. 51-52. Pl. Ex. 17, Page ID#3426, pg. 93.

Should the councilmen, when talking to members of the community on this issue, have inquired as to each member how devout they were in their faith, and if their faith was leading them to vote this way?

If the people of the City of Hamtramck disapprove of the City's decision to raise flags of certain countries whose values may not reflect those we hold dear in the United States, it is their right to voice these concerns at the ballot box and vote for an administration that chooses not to raise the flags of certain countries when engaging in government speech. The City and its leaders are subject to the democratic electoral process. Walker, 135 S. Ct. at 2245; Sutliffe, 584 F. 3d at 331 n.9 ("If the voters do

not like those in governance or their government speech, they may vote them out of office or limit the conduct of those officials 'by law, regulation, or practice.'" (quoting Summum, 555 U.S. at 468) (citation omitted).

Plaintiffs do not have the right to examine the religiosity of the councilmembers and by extension the residents of the community where the vote took place to determine whether any potential religious took place.  Pl. Ex. 14, Page ID#3290, pgs. 16-21.

## III.  Plaintiffs Were Removed From The Hamtramck Human Rights Commission For Failure To Take Direction From City Of Hamtramck Administration And Not For Expression Of Their First Amendment Rights.

Plaintiffs were appointed to the City of Hamtramck Human Relations Commission in 2013 (Gordon) and 2023 (Stackpoole) respectively.  Pl. Ex 11, PageID.5038, Page 36.  As mayoral appointments of the City of Hamtramck Human Relations Commission, Plaintiffs answer to the authority of the City of Hamtramck administration just as all other appointed bodies within the City and were subject to removal in the same manner in process by which they were appointed.  Defendant's Exhibit #2, City of Hamtramck, Charter 5-01(b)(h).

As touched on previously, Plaintiffs refused to meet and entertain any discussion as to the raising of the pride flag, contrary to Commission policy and practice and despite the City filling the Commission intentionally with LGBTQ+ members so that a quorum could be met and the flag voted on.  Pl. Ex. 11, Page

ID.5034, pg.'s. 18-20; Pl. Ex. 12, Page ID.5084, pg. 47.

Plaintiffs admit pridefully that after 2023-82 was enacted they intentionally disregarded its terms, celebrating their act of insubordination at the bar afterwards.  Pl. Ex. 14, Page ID#5087, Lines 10-13.

a. **Plaintiffs were free to express their first amendment rights, as did many in and around the City without repercussion.**

Plaintiffs were free to express their opposition to the Resolution as did many inside and outside of City Hall without repercussion.  Pl. Ex. 9, PageID.4981 *pg. 74.*

While certainly Resolution 2023-82 garnered much attention publicly, there have been many instances through the years in which someone inside or associated with the City of Hamtramck disapproves of a resolution. *Id.* The city could not possibly act to remove such individuals even if doing so were not unconstitutional, as it simply wouldn't be left with anyone on its commissions or inside City Hall. *Id.*

The reality is that the City of Hamtramck as a municipality is accustomed to environments in which free expression is not only not met with any interference but is encouraged and facilitated by all.  The Plaintiffs not only refused to adhere to direction from City administration but refused to even convene and hold a meeting of the Hamtramck Human Rights Commission regarding the pride flag per procedure, which was the sole purpose of their respective appointments.
Plaintiff's Exhibit 11, Page ID #5038, pg. 35, Lines 12-25.

Plaintiffs Gordon and Stackpoole acted in individual capacities and were

37

removed for doing so pursuant to the City of Hamtramck Charter which gives the City

such authority.  Defendant's Exhibit 2, *City of Hamtramck City Charter, Chapter 5;*

Pl. Ex. 11, Page ID#5035, pg. 25.

## IV.   CONCLUSION

By the standards governing their Motion, Plaintiffs have failed to show that

Resolution 2023-82 is not protected government speech, or that it could possibly be

construed as anything other than viewpoint and content.  Plaintiffs cannot similarly

show that there is not at least a genuine issue of material fact as to whether the

Resolution is not narrowly tailored to fulfill a compelling government interest even if

it is not viewpoint or content neutral.    Additionally, Plaintiffs have failed to show

that their removal from their respective appointed positions with the City of

Hamtramck Human Rights Commission had any relationship with their expression of

opposition to Resolution 2023-82.  Defendants ask that this Honorable Court dismiss

Plaintiffs' Motion for Summary Disposition in its entirety and ask that this Honorable

Court in applying the standards inherent with a summary motion find that when

applying the facts in the best possible light to the nonmoving party that there is not a

genuine issue of material fact and that Resolutions 2023-82 and 99 were clearly

government speech and enter a judgment to that effect.  Defendants ask in the

alternative that this Honorable Court find that there is at least a genuine issue of

material fact as to all of Plaintiff's claims and allegations supported by the record.

Dated: January 17, 2025

/s/ Odey K. Meroueh
Odey K. Meroueh P76460