UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RUSS GORDON and CATHY STACKPOOLE,

    Plaintiffs,        Case Number 23-12812
v.                Honorable David M. Lawson

CITY OF HAMTRAMCK, HAMTRAMCK
CITY COUNCIL, and AMER GHALIB,

    Defendants.
_____/

**OPINION AND ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT AND DISMISSING CASE**

  The plaintiffs in this case filed a complaint, later amended, alleging that the City of Hamtramck, Michigan and some of its officials violated their rights protected by the First and Fourteenth Amendments (and corresponding state laws) by enacting a city ordinance that restricts the display of flags on a series of 18 flagpoles located on city sidewalks lining Joseph Campau Avenue in the City's downtown historic district. The main focus of the dispute is the display of a Gay Pride flag, but the case also concerns the removal of plaintiffs Russ Gordon and Cathy Stackpoole from a Human Relations Commission that at one time regulated the display of the flags in what then could be characterized as a limited public forum. After discovery concluded, the plaintiffs filed a motion for partial summary judgment on liability, which the Court denied. Thereafter, the defendants sought and obtained leave to file their own motion for summary judgment, which was argued on August 26, 2025. For many of the reasons upon which the plaintiffs' summary judgment motion was denied, and as explained further below, the Court will grant the defendants' motion for summary judgment and dismiss the case.

I.

The facts of the case were described in detail in the Court's opinion on the plaintiffs' motion for partial summary judgment. *See Gordon v. City of Hamtramck*, No. 23-12812, 2025 WL 1970243, at *2-4 (E.D. Mich. July 14, 2025). The background dates back to May 14, 2013, when the Hamtramck City Council enacted Resolution 2013-102, which authorized a Human Relations Commission (HRC) made up of 12 residents of the City to proceed with a project for "restoration" of the flagpoles lining Joseph Campau Avenue, including solicitation of funds and the purchase and display of flags to be flown. Plaintiff Russ Gordon was Chairman of the HRC in 2013 and served in that role until he was discharged from the post by a subsequent resolution passed in July 2023. The HRC accepted suggestions from residents about what flags should be raised. Gordon attested that over the years the flags of 27 different nations were flown, as well as flags representing the Cherokee Nation of Native American peoples, and the island of Sicily. Russ Gordon aff., ECF No. 61-1, PageID.4758. During that time period, only one request to display a flag was rejected: a request to display the flag of Serbia. Gordon explained that the request was denied because it was made by a person who was Croatian, not Serbian, and raising the flag along with the Bosnian flag, which previously had been approved for display, was viewed as likely to be unsettling to some residents since the City is home to populations of both Bosnian and Serbian emigrants, and those countries had been at war recently.

In 2021, the City Council passed another resolution authorizing the display of the Pride flag (emblematic of gay pride) during the month of June. City of Hamtramck Resolution 2021-73, ECF No. 61-1, PageID.4755. In May 2022, Gordon raised the Pride flag that was procured the prior year on one of the Joseph Campau Avenue flagpoles. But the newly elected Mayor of Hamtramck, defendant Amer Ghalib, soon informed Gordon that the newly elected City Council

wanted the Pride flag to be taken down. Gordon refused to take the flag down, and it was flown through Thanksgiving 2022. Thereafter, in January 2023, plaintiff Cathy Stackpoole became a member of the HRC.

On June 13, 2023, the City Council held a public meeting that was attended by numerous City residents. At that meeting, the Council unanimously approved resolution 2023-82, which stated:

> WHEREAS, the City of Hamtramck is one of the most diverse cities in the United States, in which we should proudly promote and embrace its diversity; and
>
> WHEREAS, the City must and will serve and treat its residents equally, with no discrimination, or special treatment to any group of people; and
>
> WHEREAS, the City has authorized in the past, the Human Relations Commission to install nations['] flags on the City flagpoles to represent the international character of the City, Resolution 2013-102: and
>
> WHEREAS, each religious, ethnic, racial, political, or sexually oriented group is already represented by the country it belongs to; and
>
> WHEREAS, the City does not want to open the door for radical or racist groups to ask for their flags to be flown; and
>
> WHEREAS, this resolution does not in any way, shape or form infringe upon the fundamental right of an individual or business in the City of Hamtramck to engage free speech. Nor does this resolution limit speech by public employees provided that such employees engage in such speech in a protected time, manner and place.
>
> NOW, THEREFORE, BE IT RESOLVED by the City Council of the City of Hamtramck, Wayne County, Michigan, that the government of the City of Hamtramck does not allow any religious, ethnic, racial, political, or sexual orientation group flags to be flown on the City's public properties, and that only, the American flag, the flag of the State of Michigan, the Hamtramck Flag, the Prisoner of War flag and the nations' flags that represent the international character of our City shall be flown.

City of Hamtramck Resolution 2023-82, ECF No. 61-1, PageID.4765.

Following the passage of resolution 2023-82, plaintiffs Gordon and Stackpoole took the personal view that the resolution was an unconstitutional restriction on speech contrary to the First

Amendment, and, on July 9, 2023, acting on their own initiative, Gordon and Stackpoole raised the Pride flag on one of the Joseph Campau Avenue flagpoles. Hamtramck police were summoned by the Mayor and soon removed the flag.

At a City Council meeting on July 9, 2023, resolution 2023-99 was passed unanimously removing plaintiffs Stackpoole and Gordon from their positions on the HRC. City of Hamtramck Resolution 2023-99, ECF No. 61-1, PageID.4881. Two days later, on July 11, 2023, the City Council unanimously passed resolution 2023-100, which stripped the HRC of authority over the flagpole displays. City of Hamtramck Resolution 2023-100, ECF No. 61-1, PageID.4960.

This lawsuit followed, with the plaintiffs filing a complaint on November 6, 2023, pleading claims for alleged violations of the Free Speech and Establishment Clauses of the First Amendment, violations of the Equal Protection Clause of the Fourteenth Amendment, and assorted causes of action under Michigan state constitutional and statutory provisions. The plaintiffs eventually filed first and second amended complaints and then moved for partial summary judgment, seeking judgment as a matter of law only on their federal constitutional claims.

The Court denied that motion, applying the principles enunciated by the Supreme Court in *Shurtleff v. City of Boston*, 596 U.S. 243 (2022), by (1) holding as a matter of law that the plaintiffs could not prevail on their First Amendment claims because "it is beyond debate that after resolution 2023-82 was passed, the flagpoles were relegated to service as a vehicle exclusively of government speech, fully under the City's control," *Gordon*, 2025 WL 1970243, at *7, and recognizing the well-settled rule that government speech in a nonpublic forum is not subject to First Amendment regulation, *Shurtleff*, 596 U.S. at 251; (2) concluding, contrary to the plaintiffs' argument, that the City was not required to maintain the flagpoles as either a limited or designated public forum and could close the forum to public speech at any time without violating the First

Amendment, *id.* at *8 (citing *Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*, 460 U.S. 37, 45 (1983), *Satanic Temple v. City of Belle Plaine, Minnesota*, 80 F.4th 864, 868 (8th Cir. 2023), and *Make The Rd. by Walking, Inc. v. Turner*, 378 F.3d 133, 142 (2d Cir. 2004)); and (3) finding that even if resolution 2023-82 was subject to First Amendment scrutiny, the resolution would survive because it is a facially content- and viewpoint-neutral ordnance justified by the City's reasonable objective of foreclosing contentious public debate and litigation over the flying of flags representing competing viewpoints on social, cultural, and political topics, *id.* at *9 (citing *Sons of Confederate Veterans, Virginia Div. v. City of Lexington*, 894 F. Supp. 2d 768, 775-76 (W.D. Va. 2012), *aff'd*, 722 F.3d 224 (4th Cir. 2013)).

At oral argument on that motion, the Court had asked the defendants why they had not filed their own summary judgment motion, and counsel explained that his client did not authorize him to take that step. In its opinion, the Court observed that the plaintiffs had little apparent prospects for success due to the legal conclusions reached in the opinion, but it hesitated to rule further on the merits since defense counsel had not sought that relief. After the Court issued its opinion, defense counsel reversed his position, indicating that the defendants now had authorized him to proceed with litigation of the merits, and the defendants then sought and were granted leave to file a motion for summary judgment. The Court adjourned the trial to September 23, 2025, scheduled a hearing, and set an abbreviated briefing schedule for the motion. The Court heard oral argument on the defendants' motion on August 26, 2025.

II.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When reviewing the motion record, "[t]he court must view the evidence and draw all

reasonable inferences in favor of the non-moving party, and determine 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Alexander v. CareSource*, 576 F.3d 551, 557-58 (6th Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

The defendants' motion traces the contours of the Court's prior ruling, and the relevant undisputed facts and procedural history have not changed. The plaintiffs' response largely reiterates the same arguments advanced in their previously filed briefs on their own unsuccessful dispositive motion. They also took the opportunity to press arguments in the nature of seeking reconsideration, advocating some novel views on First Amendment jurisprudence.

The defendants' core argument is that through Resolution 2023-82, the City permissibly closed the flagpole forum to private speech, rendering it a nonpublic forum and a venue exclusively for government speech, and that government speech in a nonpublic forum is not subject to First Amendment regulation. The plaintiffs take the position that the constitutional violations stem from the *change* of the forum from a public — or at least a limited public — forum to a nonpublic forum, because the flag poles' former status accommodated the display of the Gay Pride flag, and now such a display is not allowed. But that position runs headlong into well settled precedent recognizing that "the government may decide to close a designated public forum," *Make The Rd. by Walking, Inc. v. Turner*, 378 F.3d 133, 143 (2d Cir. 2004), and that "nothing prevents [a city] from changing its policies going forward," *Shurtleff*, 596 U.S. at 258.

The plaintiffs offer several other arguments, which, with respect, do not carry the day. First, the plaintiffs argue that *Boos v. Barry*, 485 U.S. 312 (1988), endorses the view that "strict

scrutiny" is the standard applied to all government restrictions on public speech in both "public" and "nonpublic" forums. However, immediately after positing that rule, the plaintiffs cite contrary authority holding that speech regulations in a "limited public forum" or "nonpublic forum" need only be "reasonable and viewpoint neutral." Plfs.' Resp., ECF No. 83, PageID.11, n.4 (quoting *Miller v. City of Cincinnati*, 622 F.3d 524, 535 (6th Cir. 2010) ("[E]ven if we were persuaded by the City's argument that the regulation, as revised, creates only a nonpublic forum, the result would be the same, because government limitations on speech in both a limited public forum and a nonpublic forum receive the same level of scrutiny. In both instances, any restrictions must be 'reasonable and viewpoint neutral.'")). The plaintiffs' argument is defeated by the controlling authority which they themselves cited and which is opposite to their espoused position.

Second, the plaintiffs argue that the flagpoles remained a "limited public forum" even after resolution 2023-82 was enacted, because the resolution "permits the display of the POW flag and nations' flags which represent the international character of the City, but prohibits displaying all other flags which convey a different message." The plaintiffs have not cited any case supporting the view that hoisting the national flags of various countries on publicly owned flagpoles would be viewed reasonably by passing citizens as endorsing any discernible, privately espoused "message" or "viewpoint," let alone the teachings of any religion. And more to the point, the plaintiffs ignore the fact that in *Shurtleff*, the Supreme Court endorsed an ordnance with exactly the same categorical regulation of flagpole displays as constitutionally valid.

Third, the plaintiffs argue that the defendants' arguments (and the Court's previous opinion) conflate "flags" and "flagpoles" and ignore the fact that the "flags" displayed "could not constitute government speech" because the resolution allows the display of the U.S. flag, which the plaintiffs say historically represents "freedom" and "democracy," alongside the flags of other

nations governed by "authoritarian regimes" that publicly reject the principles of freedom and liberty on which the U.S. is founded, which the plaintiffs say presents a "message" of irreconcilable contradiction. The plaintiffs contend that the Court should hold — contrary to the binding precedential analysis in *Shurtleff* — that the public flagpoles in question here constituted a "limited public forum" even after Resolution 2023-82 was passed. They draw support for this contrary outcome from Justice Alito's minority concurrence in *Shurtleff*, suggesting that the Court should follow his lead and reject the majority's "factored" analysis. The plaintiffs point to Justice Alito's criticism, which two other justices joined, suggesting that the "factors" considered by the majority did not supply "principled" grounds for the result. *See Shurtleff*, 596 U.S. at 266 ("Under the Court's factorized approach, government speech occurs when the government exercises a 'sufficient' degree of control over speech that occurs in a setting connected with government speech in the eyes of history and the contemporary public, regardless of whether the government is actually merely facilitating private speech. This approach allows governments to exploit public expectations to mask censorship.") (Alito, J., concurring).

On this point, the plaintiffs' presentation founders on the basic rule that commentary from a minority of the Court is not binding precedent and cannot overcome a rule set down by a majority decision. The opinion of the Court in *Shurtleff* was authored by Justice Breyer and joined in full by five of his colleagues comprising a majority of the Court. *Id.* at 246. As the Supreme Court has explained, the rationale of a majority ruling is binding precedent. *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 67 (1996) ("When an opinion issues for the Court, it is not only the result but also those portions of the opinion necessary to that result by which we are bound."). It is axiomatic that lower federal courts are bound by the decisions of the Supreme Court issued by a majority of its members. Concurring opinions do not carry the same weight, especially when they

embark on a different path. *CTS Corp. v. Dynamics Corp. of Am.*, 481 U.S. 69, 81 (1987) ("As the plurality opinion in *Edgar v. MITE Corp.*, 457 U.S. 624 (1982), did not represent the views of a majority of the Court, we are not bound by its reasoning."); *see also Myrick v. Freuhauf Corp.*, 13 F.3d 1516, 1523 (11th Cir. 1994) (explaining that a plurality opinion of the Supreme Court "is not binding on [lower courts]," which are bound to follow "'prior Supreme Court precedent.'" (quoting *Foster v. Board of School Comm'rs*, 872 F.2d 1563, 1569-70 (11th Cir. 1989)). Regardless of any logical appeal that Justice Alito's minority concurrence may hold, the fact remains that this Court is bound to follow the rule and the reasoning of the majority holding.

Fourth, the plaintiffs attempt to distinguish the City of San Jose's flagpole ordnance called out as an acceptable exemplar by the Court in *Shurtleff*, insisting that the Court's comment that "nothing prevents Boston from changing its policies going forward" does not apply where a municipality changes an ordnance that previously allowed the display of flags by private entities into one that disallows all private flag displays, contending that the San Jose ordnance is distinct because it constrained the display of flags "from the outset." The plaintiffs also argue that Resolution 2023-82 did not succeed in converting the flagpoles into "government speech" because it allowed the display of "some flags that previously were displayed" while excluding the presentation of others. The plaintiffs have cited no decision — either controlling or persuasive — endorsing such an odd construction of the Supreme Court's plain spoken reasoning or casting aside the unambiguous exemplar suggesting how a municipality may in a principled and constitutional manner exempt its flagpole displays from First Amendment scrutiny by enacting a restrictive ordnance prescribing a discrete roster of secular banners to be flown and prohibiting the hoisting of all others.

It bears repeating that the City closed the flag poles as a forum open to the public in any respect, which it had a right to do, *Shurtleff*, 596 U.S. at 251 (citing *Pleasant Grove City v. Summum*, 555 U.S. 460, 467-469 (2009)), and reclaimed that territory for government speech. "The Constitution therefore relies first and foremost on the ballot box, not on rules against viewpoint discrimination, to check the government when it speaks." *Id.* at 252 (citing *Board of Regents of Univ. of Wis. v. Southworth*, 529 U.S. 217, 235 (2000)). Therefore, because "[t]he First Amendment's Free Speech Clause does not prevent the government from declining to express a view," *id.* at 251 (citing *Pleasant Grove City v. Summum*, 555 U.S. 460, 467-469 (2009)), Hamtramck's refusal to display the Gay Pride flag did not violate the Constitution.

Fifth, in an attempt to resurrect their Establishment Clause claim, the plaintiffs again insist that the Court should look past the language of Resolution 2023-82 and instead probe the comments about religion and sexual orientation by council members and supporters of the Resolution. True, as the plaintiffs point out, and as was acknowledged in the Court's prior ruling, "scrutinizing purpose does make practical sense . . . in Establishment Clause analysis." *McCreary County v. ACLU of Kentucky*, 545 U.S. 844, 862 (2005). However, the plaintiffs' argument entirely ignores the ensuing passages of that case, where the Court explained that the inquiry into public purpose is appropriate only "where an understanding of official objective *emerges from readily discoverable fact, without any judicial psychoanalysis of a drafter's heart of hearts*," and where it prescribed that "[t]he eyes that look to purpose *belong to an objective observer, one who takes account of the traditional external signs that show up in the text, legislative history, and implementation of the statute, or comparable official act*." *Ibid.* (cleaned up; emphasis added). The plaintiffs have not identified any such signs intrinsic to the "text, legislative history, and

- 10 -

implementation" of the 2023 resolution betraying any discernible motive to advance the interests of one particular religion over another, or to elevate religious over secular views.

Moreover, the record here contrasts starkly with *McCreary*, where the Court confronted a county ordnance mandating the display in a public courthouse of the Ten Commandments quoted from a version of the Christian Bible. The Court found there that the "text [of the display] viewed in its entirety is an unmistakably religious statement dealing with religious obligations and with morality subject to religious sanction," and it concluded that "[w]hen the government initiates an effort to place this statement alone in public view, *a religious object is unmistakable*." *Id.* at 869 (emphasis added). No such transparent motive to advance religiosity is patent in the resolution enacted here, which did not endorse the flying of *any* banner representing any religious sect or creed, and where the roster of flags prescribed consists exclusively of the secular standards of local, state, national, and international entities. The plaintiffs have not cited any case holding that any such ordnance could be construed as representing an unambiguous governmental motive to advance the interests of a particular religion, either overtly or inferentially. And the other cases cited by the plaintiffs for general propositions of free speech jurisprudence all precede the explicit guidance on inquiries into legislative motive prescribed in *McCreary*.

Finally, the plaintiffs again make no serious effort to defend the Equal Protection claim, nor do they suggest that the analysis of their state law claims ought to depart from the resolution of their federal claims. The Sixth Circuit has recognized as a general matter that the rights to Free Speech and Equal Protection are coterminous under the federal and state constitutions. *Lucas v. Monroe Cnty.*, 203 F.3d 964, 972 n.4 (6th Cir. 2000) ("Because Plaintiffs' rights under the Michigan Constitution essentially track those guaranteed by the United States Constitution, the same analysis that governs their federal constitutional claims applies to their corresponding state

claims."), and Michigan courts agree, *Woodland v. Michigan Citizens Lobby*, 423 Mich. 188, 202, 378 N.W.2d 337, 343 (1985) ("The Michigan Constitution has been interpreted as affording broader protection of some individual rights also guaranteed by the federal constitution's Bill of Rights. The Michigan Constitution has never been so interpreted in the free expression and petition context."); *see also Roy v. Rau Tavern, Inc.*, 167 Mich. App. 664, 667, 423 N.W.2d 54, 56 (1988) ("The Michigan Constitution secures the same right of equal protection (Const. 1963, art. 1, § 2) and due process (Const.1963, art. 1, § 17) as does the United States Constitution (U.S. Const., Am. XIV)."). The plaintiffs' state law claims here rise and fall with the federal constitutional claims, and they have not argued otherwise.

### III.

The defendants have established on the basis of an undisputed record that the plaintiffs' First Amendment claims are unsustainable under the controlling jurisprudence established by *Shurtleff*, and the plaintiffs have made no effort to support the required elements of their Equal Protection claims. As before, the plaintiffs have not come forth with evidence in this record that creates factual disputes or establishes their right to relief on their federal claims as a matter of law; nor have they offered any basis for the Court to depart from its holdings expressed in the prior opinion denying their motion for partial summary judgment. The same must be said for the corresponding state law claims.

Accordingly, it is **ORDERED** that the defendants' motion for summary judgment (ECF No. 78) is **GRANTED**.

It is further **ORDERED** that the case is **DISMISSED WITH PREJUDICE**.

s/David M. Lawson
DAVID M. LAWSON
Dated:  September 8, 2025          United States District Judge